## CITY OF MOBILE et al. v. MARX & CO.
### No. 7554.

Circuit Court of Appeals, Fifth Circuit.
Feb. 6, 1935.

Harry Seale, Harry H. Smith, and Frank J. Yerger, all of Mobile, Ala., for appellants.

John S. Coleman, of Birmingham, Ala., for appellee.

Before SIBLEY, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

In February, 1933, the appellee, Marx & Co., a corporation, recovered judgment against the city of Mobile (hereinafter referred to as the city), in the sum of $39,-122.22, on street improvement bonds issued by the city in September, 1929. After an execution on that judgment had been returned "no property found," the appellee filed a petition against the city and officials thereof praying the issuance of a peremptory writ of mandamus requiring the payment to appellee, on account of said judgment, in addition to sums of money collected on assessments pledged to the payment of said bonds, and other described moneys, all sums of money collected by the city from any source whatever (except such portion of the revenue derived from the operation of the city's waterworks as is necessary to pay the operating expenses thereof), and not

used by the city to pay its ordinary current operating expenses, exclusive of any payments whatever on account of the principal or interest of any obligations of the city, whether represented by bonds, notes, or coupons, until said judgment and interest thereon is fully paid, satisfied, and discharged. Following the filing of an answer to that petition the court on April 3, 1933, ordered the issue of a peremptory writ of mandamus; the order to that effect being amended from time to time between the date of that order and March 1, 1934. On the last-mentioned date the city filed a petition praying that the order, as last amended, be further amended in particulars specified, and on the same date the Mutual Life Insurance Company of New York (hereinafter referred to as the insurance company), by permission of the court, filed its petition of intervention alleging its ownership of $100,000 face value of sewer bonds issued by the city in November, 1912, for the purpose of securing funds to extend the city's sewerage system, pursuant to authority conferred on the city by referred to acts of the Legislature°of Alabama passed in the year 1898 (Loc. Acts Ala. 1898–99, p. 16), that interest payments on said bonds then were in default, that moneys applicable to the payment of that interest then were in the hands of the city, which would apply those moneys to the payment of that interest but for the orders of the court restraining it from so doing; and the petitioner prayed that the court enter an order rescinding the order theretofore granted directing the issue of the peremptory writ of mandamus as that order had been amended. Upon a hearing on the petition of the city filed March 1, 1934, on the petitions of intervention filed in the cause, and on the evidence adduced, the court, on June 26, 1934, rendered a decree, which adjudged: "1. That the Springhill Waterworks and the Bienville Waterworks are one system. 2. That the governing body of the City of Mobile has no authority to charge as part of the operating expenses of the said waterworks system or the sewer system any part of the salaries of the Commissioners of the City of Mobile, or any amount for use of its streets by the waterworks system, or any rent for office space in the municipal building. 3. That said petition of the City of Mobile be denied, except as hereinafter set out. 4. That the $100,000. of Sewer Bonds of the City of Mobile, dated November 1, 1912, have no lien or claim upon the said waterworks or its revenue, and that the holders of said bonds are not entitled to payment of either principal or interest out of the revenues derived from the operation of the said waterworks system. 5. That the said petition of the Mutual Life Insurance Company of New York be denied." That decree also adjudged that a peremptory writ of mandamus be forthwith issued directing and requiring the city and named officials thereof:

"1. To keep the revenues derived from the operation of the waterworks system separate and apart from all other revenues of the City of Mobile, and to apply and dispense all revenue derived from the operation of the waterworks system of the City of Mobile as follows:

"First. To the payment of the operating expenses of the waterworks system and the sewer system owned or operated by the City of Mobile.

"Second. To the payment of the interest on the $741,000. face amount of waterworks and sewer bonds of the City of Mobile, dated January 2, 1899, now remaining outstanding and unpaid, as such interest matures.

"Third. To the payment of the principal of and interest on the face amount of the bonds issued by the City of Mobile, dated January 1, 1907, called Bienville Bonds, now remaining outstanding and unpaid as such principal and interest mature.

"Fourth. To the payment of the cost of any repairs to or extensions of said waterworks system and said sewer system that may be deemed expedient by the governing body of said City, and as may be made from time to time and paid for in cash out of the earnings of said waterworks and sewer systems.

"Fifth. To pay over to the First National Bank in Mobile within thirty days after the close of each fiscal year any waterworks revenue remaining after the payment of the items mentioned 1st. to 4th. inclusive, above, such money so paid to said bank to be applied and used by said First National Bank in Mobile in accordance with the terms of section 3 of the act of the General Assembly of Alabama, approved November 30, 1898 (Local Acts of Alabama, 1898–99, pages 16–18), that is to say, in the purchase and retirement of said waterworks and sewer bonds of the City of Mobile, dated January 2, 1899, until all of said bonds have been purchased and cancelled.

"2. To immediately pay over to the said First National Bank in Mobile all sums of money now in the hands of said City arising from the operation of said waterworks and

sewer systems, after the payment of the first four items mentioned in sub-paragraph 1 above, to be used by the said bank as directed in said sub-paragraph 1 of this para-graph.

"The said Order of Mandamus of April 3, 1933, as heretofore amended is hereby further amended to conform to this order."

Appeals from that decree were sued out by the city and by the insurance company.

On November 30, 1898, two local acts of the Legislature of Alabama were approved, called, respectively, Act No. 8 and Act No. 9 (Loc. Acts Ala. 1898–99, pp. 16, 19). Act No. 8 authorized the city to acquire water-works and sewerage systems, to execute bonds for purchasing or otherwise acquir-ing such systems, and to mortgage or con-vey by deed of trust said systems to secure the payment of such bonds. That act pre-scribes terms and provisions to be contained in such mortgage or deed of trust, includ-ing the requirement that such mortgage or deed of trust "shall convey any and all prop-erty constituting a part of, or used in con-nection with said water works or sewerage systems, whether owned at the time of the execution and delivery of said mortgage or acquired thereafter." Section 2, p. 17. Act No. 9 authorized the city to provide, main-tain, and operate the waterworks and sewer-age systems, to collect such rates for water supplied for the use of said sewerage system as shall be sufficient to pay the interest on any bonds issued by the city for the purpose of providing said waterworks and sewerage systems, to apply the same to the payment of such interest, and "to extend such water works and sewerage systems in any part of the County of Mobile it may deem proper, and in such event all the powers conferred upon and given to the said mayor and gen-eral council shall apply to such portions of such water works and sewerage systems." Section 3, p. 21. Pursuant to the authority conferred by those two acts the city issued $750,000 of bonds, dated January 2, 1899, and a mortgage or deed of trust to secure those bonds, the mortgage or deed of trust covering all property of the waterworks and sewerage system then owned and possessed by the city, and all property "which may be hereafter acquired by the said City of Mo-bile for use in, or connected in any way with, the construction, use, maintenance or operation of said waterworks and sewerage system, whether such system, or a portion thereof, be acquired by purchase or con-struction." The proceeds of part of the bonds secured by that mortgage or deed of trust were used in the purchase or construc-tion of a system of waterworks, and the pro-ceeds of another part of those bonds were used in the purchase or construction of a system of sewerage. In January, 1907, the city issued $350,000 of bonds for the pur-pose of acquiring what was known as the Bienville waterworks system, and executed a mortgage securing those bonds; that in-strument being similar to the one securing the previously issued $750,000 of bonds, and containing a similar "after-acquired proper-ty" clause. In November, 1912, the city is-sued $100,000 of bonds for the purpose of extending the sewer system, and all the pro-ceeds from those bonds, which are owned by the insurance company, were used for that purpose. Those bonds on their face are designated "Sewer Bonds," and stipulate: "For the punctual payment of this bond and the interest thereon as it falls due, the faith, credit and revenues of the City of Mobile are hereby pledged to each successive holder of this bond and of the coupons hereto at-tached." For the purpose of extending its waterworks and sewer systems, the city is-sued additional bonds as follows: $350,000 face value of "waterworks and sewer bonds," dated November 1, 1923; $400,000 of waterworks "series A" bonds dated Jan-uary 1, 1929; $150,000 waterworks "series B" bonds, dated December 1, 1930; and $150,000 sewer "series A" bonds, dated December 1, 1930. The above-mentioned bonds subsequent in date to those issued in January, 1907, were not secured by any mortgage or deed of trust. The interest on all the bonds not secured by mortgage or deed of trust is in default. For many years the city paid the interest on all of those bonds out of the revenues from the water-works and sewer systems, and the city has paid all the principal of the Bienville bonds except $52,000 still outstanding, and has paid $9,000 on the principal of the $750,000 of bonds dated January 2, 1899, and $14,000 on the principal of the "series A" water-works bonds dated December 1, 1930.

■ In behalf of the appellant it was con-tended that nothing contained in either of the above-mentioned local acts passed in 1898 governed or affected the power of the city with reference to the bonds issued by it in 1912 and in subsequent years, because those local acts were repealed by an act passed in February, 1903, to authorize cities and towns in the state of Alabama to cause elections to be held to authorize the issue

of bonds for purchasing or constructing sewers and waterworks, and for other specified purposes, which act contained the provision: "All laws or parts of laws in conflict with the provisions of this Act are hereby repealed." Acts of Ala. 1903, pp. 59, 64, § 16. It is apparent that the occasion or necessity for the enactment of that statute was created by provisions of the Constitution of Alabama which was adopted in 1901. Section 104 of that Constitution provides that: "The legislature shall not pass a special, private, or local law in any of the following cases: * * * (17) Authorizing any county, city, town, village, district, or other political subdivision of a county, to issue bonds or other securities unless the issuance of said bonds or other securities shall have been authorized before the enactment of such local or special law, by a vote of the duly qualified electors of such county, township, city, town, village, district, or other political subdivision of a county, at an election held for such purpose, in the manner that may be prescribed by law; * * * The legislature shall pass general laws for the cases enumerated in this section. * * *" Section 222 of that Constitution provides: "The legislature, after the ratification of this constitution, shall have authority to pass general laws authorizing the counties, cities, town, villages, districts, or other political subdivisions of counties to issue bonds, but no bonds shall be issued under authority of a general law unless such issue of bonds be first authorized by a majority vote by ballot of the qualified voters of such county, city, town, village, district, or other political subdivision of a county, voting upon such proposition. * * *" It was contended in behalf of the appellee that upon the adoption of that Constitution the power of the city with reference to incurring indebtedness was governed by the above-mentioned provisions of that Constitution, and also by the provision of section 225 thereof, which limits or restricts the amount of debts which may be incurred by towns or cities having a population of 6,000 or more to not exceeding 7 per centum of the assessed valuation of the property therein, provided that there shall not be included in such limitation of indebtedness stated classes of indebtedness, including bonds or other obligations issued for the purpose of providing or constructing waterworks and sewers. Nothing contained in the above-mentioned act passed in 1903 is in conflict with any provision of the above mentioned local acts passed in 1898, and the repealing clause of the act passed in 1903 does not purport to repeal any laws or parts of laws not in conflict with provisions of the act passed in 1903. General laws dealing with a subject are not to be construed as repealing special laws dealing with the same subject. City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159; United States v. Newton (D. C.) 36 F.(2d) 425. The power of the city to incur indebtedness, conferred by legislation enacted prior to the adoption of the present Constitution of Alabama, is not affected by the provisions of that Constitution which are invoked in behalf of the appellee. The above set out provisions of sections 104 and 222 of that Constitution are prospective in operation, and do not purport to apply to special, private, or local laws passed prior to the adoption of that Constitution, and which were in force at that time. The limitation of the power to incur debt, created by section 225 of that Constitution, by an express provision thereof is made inapplicable to bonds or other obligations issued by a town or city having a population of 6,000 or more for the purpose of acquiring, providing or constructing waterworks and sewers.

█ There is no merit in the suggestion made in argument of counsel for the appellee that the city's bonds which were issued in 1912, and are owned by the insurance company, are not governed by provisions of one or both of the local acts passed in 1898, because those bonds on their face show that they are governed by the act approved August 26, 1909, authorizing the holding of elections by municipal corporations in Alabama for the purpose of obtaining authority to issue bonds for stated public purposes, including the erection or purchase of waterworks and sewers. Gen. Acts Ala. 1909, Sp. Sess., p. 188. Each of those bonds contained the recital: "This bond is constructed for the purpose of extending and constructing sanitary sewers in said City and pursuant to and in full compliance with the Constitution of the State of Alabama and the statutes of said State, including among others an Act of the Legislature of the State of Alabama, approved August 26, 1909 entitled. * * *" The recital by no means shows that the act of August 26, 1909, was the only statute in pursuance of which the bonds were issued. The recital covers any statute in force at the time the bonds were issued conferring or governing the power of the city to incur the debt evidenced by the bonds.

That applicable provisions of the local acts passed in 1898 governed above-mentioned bonds of the city issued after the adoption of the present Constitution of Alabama is shown by the decision in the case of City of Mobile v. Mobile County, 169 Ala. 539, 53 So. 793. That case involved a question as to the duties or obligations of the city resulting from its acquisition and ownership of the Bienville waterworks, which were purchased by the city in 1907. The opinion of the court shows that the decision of the question presented was governed by provisions of the above-mentioned local act No. 8. The contention that provisions of the local acts 8 and 9 of 1898 are not applicable to bonds of the city issued after the adoption of the Alabama Constitution of 1901 and the passage of the above-mentioned Act of February 25, 1903, is not reconcilable with the decision in the just cited case.

■ We now come to the question whether provisions of one or both of the local acts passed in 1898 have the effect of making the city's revenue from its waterworks and sewerage systems applicable to the payment of the principal or interest of above-mentioned sewer and waterworks bonds issued by the city in 1912 and in subsequent years. Act No. 9, after conferring on the city power to buy, or to build, erect, and maintain, and to operate waterworks and a system of sewerage, provides in section 3 thereof: "That the said mayor and general council shall and it is hereby invested with full authority and power to make all proper regulations for preserving, maintaining, and operating such water works and sewerage systems when established, and to collect such rates for waters supplied for the use of said sewerage system as shall be sufficient to pay the interest on any bonds issued by said city for the purpose of providing said water works and sewerage systems, and the expenses necessary for operating the same, and to collect the dues for water so supplied and used and for the use of said sewerage system, and to apply the same to the payment of such interest, provided, that such rates shall not exceed the usual and customary rates charged by other cities, similarly situated, for like service. And the mayor and general council shall be and it is hereby authorized and empowered to extend such water works and sewerage systems in any part of the County of Mobile it may deem proper, and in such event all the powers conferred upon and given to the said mayor and general council shall apply to such portions of such water works and sewerage systems."

■ The power conferred by the part of that section preceding its concluding sentence included the power to collect rates sufficient to pay the interest on any bonds issued by the city for the purpose of providing said waterworks and sewerage systems, and to apply the same to the payment of such interest. The power exercisable by the city under the concluding sentence of that section included the power to collect rates sufficient to pay the interest on bonds issued for the purpose of effecting authorized extensions of the city's waterworks and sewerage systems. The fact that the provision authorizing the city to collect such rates as shall be sufficient to pay the interest on any bonds issued by the city for the purpose of providing said waterworks and sewerage systems was immediately followed by the provision authorizing the city to extend such systems and conferring on the city, in the event of its exercise of the power to make extensions, all the powers conferred upon it, fairly imports an intention to authorize the city to collect such rates for water supplied for its sewer system as extended as shall be sufficient to pay interest on any bonds issued for the purpose of effecting authorized extensions. In view of the fact that the property added as a result of such extension would be covered by the mortgages or deeds of trust securing the bonds issued by the city in 1899 and in 1907, it cannot reasonably be inferred that the words "any bonds," as used in said section 3, referred only to the bonds which were secured by mortgage or deed of trust, with the probable result of leaving the city without adequate means of securing the repayment of funds borrowed for the purpose of paying for authorized extensions. For many years officials of the city have construed the provisions now in question as authorizing the payment of interest on waterworks and sewer bonds out of the revenues from those systems. The language of those provisions not clearly showing that the officials were in error in so doing, a doubt as to the meaning of the language used must be resolved in favor of that construction. Grand Trunk Western R. Co. v. United States, 252 U. S. 112, 40 S. Ct. 309, 64 L. Ed. 484; Alexander v. Carter Oil Co. (C. C. A.) 53 F.(2d) 964. It fairly may be inferred that the purchasers of waterworks and sewer bonds issued in 1912 and subsequent years relied on that construction. The power of the city to collect rates sufficient to pay interest on bonds

authorized to be issued is a power enuring to the benefit of the holders of such bonds. Each of the bonds held by the insurance company expressly pledged revenues of the city "to each successive holder of this bond and of the coupons hereto attached." This pledge covered revenues of the city which by statute were made applicable to the payment of interest on those bonds. The holders of the city's waterworks and sewer bonds were entitled to have the proceeds of authorized rates applied to the payment of interest on those bonds. Bankhead v. Town of Sulligent (Ala. Sup.) 155 So. 869, 870; Von Hoffman v. Quincy, 4 Wall. 535, 554, 18 L. Ed. 403; Ramage, Parks & Co. v. Folmar, 214 Ala. 661, 108 So. 580.

■ By the decree under review no payments on the city's above-mentioned bonds were allowed to be currently made from the revenues derived from the city's waterworks system except on the bonds which were secured by mortgage or deed of trust conveying property. It is to be inferred that this discrimination was a result of the conclusion that the deeds of trust or mortgages covered income of the properties conveyed. None of those instruments covers the income or revenue from the property conveyed. The beneficiary of such a mortgage or deed of trust is not entitled to the rents or income of the property conveyed prior to the law day of the instrument and intervention by the beneficiary for the purpose of enforcing the instrument. Zeidman v. Homestead Savings & Mortgage Co., 221 Ala. 386, 129 So. 281. The discrimination now under consideration was not warranted.

■ The petition filed by the city on March 1, 1934, contained allegations to the effect that the city's waterworks and sewerage systems used office space in the city's municipal building, and that officials of the city rendered services in connection with the administration of said systems, and a prayer that the court declare by order that the city has authority to charge as part of the operating expenses of its waterworks and sewerage systems reasonable amounts for the alleged use of other property of the city and of services of its officials, such amounts to be paid into the city's general fund. When a municipality owns and operates a public utility, it is within the discretion of the municipal authorities to charge expenses reasonably attributable to

such operation against the income or revenue produced thereby. By the part of the decree which dealt with that subject the right of the municipal authorities to exercise a discretion vested in them was denied, and the court determined what municipal expenditures are necessary or proper. We are of opinion that the court erred in so doing. White v. Mayor & Council of Decatur, 119 Ala. 476, 23 So. 999. By the decree the court also erroneously assumed the power to forbid the exercise by the city's officials of the discretion vested in them in the matter of making extensions of its waterworks and sewerage systems, and providing for the payment of the interest on bonds issued for such purpose from funds derived from authorized water rates prescribed.

■ The decree had the effect of depriving the municipal authorities for an indefinite period of time, possibly many years, of the power to administer revenues derived from the city's waterworks system, of controlling the action of the municipal authorities in matters in respect to which they are vested with discretionary powers, and of compelling the performance of a series of continuous acts which the municipal authorities were under no duty to perform prior to the making by the court of its order. The writ of mandamus ordered to be issued went far beyond the ordinary office of such a writ, namely, to coerce the performance of single acts of specific and imperative duty. State v. Miller, 204 Ala. 234, 85 So. 700; Bibb v. Gaston, 146 Ala. 434, 40 So. 936; 18 R. C. L. 119. The power to issue the writ is abused by making it serve the purpose of enabling the court, to the end of creating in the future a fund or surplus to be applied to the payment of a debt owing by a municipality, to retain control of the administration of revenues of the municipality, and to interfere with the future exercise by the municipality's officials of the discretion vested in them, with the probable result of the court frequently being called on to supervise the conduct of such officials and to determine whether that conduct is in conformity with the court's orders. East St. Louis v. United States ex rel. Zebley, 110 U. S. 321, 4 S. Ct. 21, 28 L. Ed. 162; Wilbur v. United States, 281 U. S. 206, 218, 50 S. Ct. 320, 74 L. Ed. 809.

For reasons above indicated, the decree under review is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.