**GEORGE et al. v. CITY OF ASHEVILLE, N. C., et al.**

No. 3919.

Circuit Court of Appeals, Fourth Circuit.

Nov. 13, 1935.

David M. Wood, of New York City (W. M. Hendren and B. S. Womble, both of Winston-Salem, N. C., on the brief), for appellants.

Robert R. Williams, of Asheville, N. C., for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a suit instituted by holders of bonds of the city of Asheville, N. C., against that city, its mayor, its city manager, and the members of its city council. Some of the bonds held by complainants are waterworks bonds issued subsequent to the passage of the North Carolina Municipal Finance Act of 1917 (Laws 1917, c. 138); some are waterworks bonds issued prior to the passage of that act; some are sewerage bonds issued to provide for the construction or extension of sewers used as a part of the city's waterworks system; some are bonds refunding water and sewer bonds theretofore issued; some are improvement bonds, definite portions of the proceeds of which were used for water and sewer purposes; and some are bonds of West Asheville, Biltmore, and Kenilworth, the proceeds of which were used in whole or in part in the construction of water and sewer systems, which were incorporated in the system of the city of Asheville when that city absorbed these three municipalities and assumed the payment of their bonds. Complainants alleged that under the provisions of the Municipal Finance Act the net revenue derived from the operation of the waterworks system of the city of Asheville should be applied on the outstanding water and sewer bonds of the city; that the operation of the waterworks system had for several years resulted in net revenues within the meaning of the act; and that the defendants, although often requested to do so, had refused to apply such net revenues as required by law, but had diverted them to other purposes and threatened to continue to do so. Bill was filed by complainants in behalf of all persons holding bonds of like character as theirs, as well as in their own behalf; and the principal relief asked was that injunction be granted restraining defendants from diverting these net revenues to purposes other than those allowed by the Municipal Finance Act. Other relief was asked, however, to much of which complainants were obviously not entitled.

See City of Mobile v. Marx & Co. (C.C.A. 5th) 75 F.(2d) 569.

The judge below dismissed the bill on the motion of defendants on the grounds: (1) That no demand in writing had been made upon the city in accordance with section 1330 of the Consolidated Statutes of North Carolina and the provisions of the city charter, requiring such written demand as prerequisite to action upon "any claim or demand whatsoever of any kind or character" against the city; and (2) that the waterworks system of the city was not a revenue producing enterprise within the meaning of the section of the Municipal Finance Act relied upon by complainants.

■ As to the first of these grounds, we do not think that a bill in equity seeking to enjoin the diversion of a fund in which complainants allege that they have an interest is an action upon a claim or demand against the city within the meaning of either section 1330 of the Consolidated Statutes or the provision of the city charter upon which defendants rely. The purpose of both of these statutes was to give the municipality an opportunity to pass upon and pay a claim involving a money demand before it could be subjected to the burden and expense of litigation. They manifestly have no application to suits in equity the object of which is to protect and preserve the rights of complainant as against threatened action by the city or its officers. 44 C.J. 1465; 19 R.C.L. 1042; Sammons v. Gloversville, 175 N.Y. 346, 67 N.E. 622; Kiser v. Douglas County, 70 Wash. 242, 126 P. 622, 41 L.R.A.(N.S.) 1066, Ann.Cas. 1914B, 721; note in 52 A.L.R. at pages 640 and 659–663 and cases there cited. The case of Virginia Trust Co. v. City of Asheville, 207 N.C. 162, 176 S.E. 257, relied upon by defendants, was an action to recover on a claim for damages to real estate, not a suit for an injunction.

■ And, as to the second ground, we think there was error in holding that the waterworks system of the city was not a revenue-producing enterprise within the meaning of the Municipal Finance Act of 1917. The applicable section of that act is brought forward into the Consolidated Statutes of North Carolina as section 2959, as amended by Laws 1921, Ex.Sess. c. 106, § 1, which for convenience, is copied in the margin.*

It is clear from a reading of this statute that the Legislature intended that, where bonds were issued to enable a municipality to carry on a revenue producing enterprise, the net revenue derived from such enterprise should be applied to the payment of the interest and principal of such bonds; and it is quite significant that, by another section (C.S. § 2943, as

---

*"2959. Taxes levied for payment of bonds. The full faith and credit of the municipality shall be deemed to be pledged for the punctual payment of the principal of and interest on every bond and note issued under this act, including assessment bonds or other bonds for which special funds are provided. The governing body shall annually levy and collect a tax ad valorem upon all the taxable property in the municipality sufficient to pay the principal and interest of all bonds issued under this act as such principal and interest become due: Provided, however, that such tax may be reduced by the amount of other moneys appropriated and actually available for such purpose.

"So much of the net revenue derived by the municipality in any fiscal year from the operation of any revenue producing enterprise owned by the municipality after paying all expenses of operating, managing, maintaining, repairing, enlarging, and extending such enterprise, shall be applied, first to the payment of the interest, payable in the next succeeding year on bonds issued for such enterprise, and next, to the payment of the amount necessary to be raised by tax in such succeeding year for the payment of the principal of said bonds. All money derived from the collection of special assessments for local improvements for which bonds or notes were issued shall be placed in a special fund and used only for the payment of bonds or notes issued for the same or other local improvements.

"Every municipality shall have the power to levy taxes ad valorem upon all taxable property therein for the purpose of paying the principal of or the interest on any bonds or notes for the payment of which the municipality is liable, issued under any act other than this act, or for the purpose of providing a sinking fund for the payment of said principal, or for the purpose of paying the principal of or interest on any notes issued under this act.

"The powers stated in this section in respect of the levy of taxes for the payment of the principal and interest of bonds and notes shall not be subject to any limitation prescribed by law upon the amount or rate of taxes which a municipality may levy. Taxes levied under this section shall be levied and collected in the same manner as other taxes are levied and collected upon property in the municipality."

amended by Laws 1921, Ex.Sess., c. 106, § 1), bonds in aid of the ordinary revenue-producing enterprises of a city, i. e. enterprises for furnishing water, gas, electric light, or power, were exempted from the debt limitation of the statute. This shows that it was thought that, while the credit of the municipality would be pledged for bonds of this character, they would not be a charge upon the taxing power of the city but would be taken care of by the revenues of the enterprises for which they were issued.

A revenue-producing enterprise defines itself. It is manifestly one which produces revenue, not necessarily one which produces profit or net revenue, although this distinction is not material here, as it is only net revenue which is to be applied upon the interest and principal of the bonds under the direction of the statute. As the waterworks system produces revenue, it is a revenue-producing enterprise; and, if net revenues are derived from it, after paying all expenses of operating, managing, maintaining, repairing, enlarging, and extending such system, the statute requires that they be applied to the payment of the principal and interest due on the bonds issued "for such enterprise." The bill of complaint alleges that there are net revenues after making these payments; and, if so, complainants are entitled to have them applied as the statute directs, and defendants should be enjoined from using them for other purposes.

■ We agree with defendants that it was not the intention of the Legislature, by the provision in question, to interfere with the discretion of the city authorities in operating, managing, maintaining, repairing, enlarging, or extending the waterworks system of the city, in making expenditures therefor, or in fixing the rates to be charged for the services which it renders. This discretion is vested in them by section 30 of the city charter and by section 2808 of the Consolidated Statutes as amended by chapter 353 of the Public Laws of 1933; and the requirement that net revenues after paying the expenses of operation shall be applied on bonds does not mean that this discretion is in any wise limited. And we do not think that, under the guise of protecting from diversion the net revenues of the waterworks system, the courts would be justified in taking the control of that system out of the hands of those to whom the law has entrusted it,

or in attempting by judicial order to control the exercise of the discretion which the law has vested in them. City of Mobile v. Marx & Co., supra (C.C.A.) 75 F. (2d) 569, 575. It is for the governing body of the city to manage and control the system, to fix rates, and decide upon repairs, extensions, etc. Only in the event that there are net revenues remaining after these things have been done, do the holders of waterworks bonds have the right to the application of such net revenues upon the principal and interest of their bonds, although they have the right, of course, to insist that in the meantime the net revenues be not dissipated by application to other purposes. In other words, the governing body of the city may make such use of the gross revenues of the system as in the bona fide exercise of their discretion they may think wise for maintaining, repairing, enlarging, or extending the system, and may fix such rates as they may deem proper; but they may not divert its revenues to other purposes so as to dissipate the net revenues, which the law requires to be applied on the principal and interest of waterworks bonds.

■ With respect to the bonds entitled to share in the net revenues of the waterworks system, we think that the statute clearly intended that such net revenues should be applied on the principal and interest of all bonds which were issued for the system. As the sewer system is an integral and essential part of the waterworks system and with it constitutes one revenue-producing enterprise, we think that sewer bonds should share along with waterworks bonds in the net revenues of the waterworks system. See McNeill v. Town of Whiteville, 186 N.C. 163, 119 S.E. 6; Lamb v. City of Randleman, 206 N.C. 837, 175 S.E. 293. And we think that funding and refunding bonds, to the extent that they incorporate indebtedness evidenced by waterworks or sewerage bonds which are retired, are to be counted waterworks bonds within the meaning of the statute, as it is elementary that funding and refunding bonds create no new debt. Likewise, general improvement bonds of the city, to the extent that they incorporate indebtedness incurred for the waterworks and sewerage system, are to be counted with the waterworks bonds for the purpose of sharing in the net revenue. On the same principle, bonds of Biltmore, Kenilworth, and West Asheville, issued for waterworks or sewerage systems taken over

by the city of Asheville when it absorbed these municipalities and assumed the payment of their debts, should share in the revenues; for these bonds were issued for parts of the waterworks system now operated by the city of Asheville, and they should share in the net revenues of the system as well as the other bonds issued in connection with the building of the system.

And we think that the bonds mentioned in the preceding paragraph, which constitute the total of the outstanding waterworks and sewerage bonds of the city, are entitled to share in the net revenues derived from the operation of the waterworks and sewerage system whether they were issued before or after the passage of the Municipal Finance Act. There is nothing in the section of the Municipal Finance Act which we have quoted (C.S. § 2959, as amended) which limits the application of the net revenue of a revenue-producing enterprise to bonds thereafter issued and there is no reason why the section should be so interpreted. The language of the section provides in the broadest possible terms that the net revenue from such an enterprise shall be applied on the principal and interest of bonds "issued for such enterprise," without limitation as to when such bonds may have been issued; and from the standpoint of municipal finance, for which the Legislature was providing, it was just as important that these revenues be applied on the interest and principal of bonds previously issued as on bonds to be issued thereafter. It is true that ordinarily statutes should be construed to apply prospectively, but the statute here is given a prospective operation when future net revenues are applied on bonds, and its operation is no less prospective because some of the bonds upon which the revenues are applied may have been issued prior to its enactment.

There can be no question, so far as the city is concerned, as to the power of the Legislature to direct that revenues derived from municipal enterprises shall be applied on outstanding bonds as well as upon bonds thereafter to be issued; for the Legislature has plenary power to control the finances of the municipal corporations which it creates, and to direct how their revenues shall be applied. The city can raise no question with regard thereto under the federal constitution; for, as said by Mr. Justice Cardozo in Williams, Receiver of the W. B. & A. R. Co. v. Mayor & City Council of Baltimore, 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015, "A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke." And there is nothing in the Constitution of North Carolina which prevents the exercise of such powers by the Legislature. On the contrary, article 8, § 4, of the Constitution of North Carolina expressly provides: "It shall be the duty of the Legislature to provide by general laws for the organization of cities, towns, and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessment and in contracting debts by such municipal corporations." And the plenary power of the Legislature over municipal corporations is thus tersely expressed by the North Carolina Supreme Court in Town of Murphy v. C. A. Webb & Co., 156 N.C. 402, 72 S.E. 460, 461: "While in respect to cities and towns, it is said that the power of the Legislature to control them, in the exercise of their municipal powers, is somewhat more restricted than in the case of counties, yet both are but instrumentalities of the state for the administration of local government, and their authority as such may be enlarged, abridged, or withdrawn entirely at the will or pleasure of the Legislature."

See, also, Brockenbrough v. Board of Water Com'rs of City of Charlotte, 134 N. C. 1, 46 S.E. 28; and Wood v. Town of Oxford, 97 N.C. 227, 2 S.E. 653.

It is contended that the re-enactment of the charter of the city of Asheville in 1923 (Private Laws 1923, c. 16, § 245) operated to repeal the provisions of the Municipal Finance Act in so far as it had application to that city. This contention is based upon the fact that the charter of 1901, re-enacted by the Act of 1923 (Private Laws 1901, c. 100, § 87) contained the following provision: "All debts and liabilities of said city heretofore or hereafter contracted or incurred, shall be paid and discharged alone by taxation upon subjects properly taxable by it to the extent allowed by law, and no such debt or liability shall be subject to be levied upon or collected by execution against said city or any property, real or personal, held by it, and no execution therefor shall issue

against said city on any judgment obtained thereon."

It is clear, however, that the purpose of this provision was, not to prevent revenues derived from operation of municipal enterprises from being applied on municipal debts, but merely to guard against issuance of execution against the city and levy upon and sale of its property; and we do not think that it in any way conflicts with the wise and salutary provision of the Municipal Finance Act requiring that net revenues of revenue-producing enterprises be applied to the liquidation of debts incurred in their behalf. It is well settled that a general law, such as the Municipal Finance Act, will not be held to be impliedly repealed by a law granting a charter to a municipal corporation where effect may reasonably be given to the provisions of both laws. 25 R.C.L. 927; Michigan Telephone Co. v. Benton Harbor, 121 Mich. 512, 80 N.W. 386, 47 L.R.A. 104. And "in so far as a later law is merely a re-enactment of an earlier one, it will not repeal an intermediate act which qualifies or limits the first one, but such intermediate act will be deemed to remain in force, and to qualify or modify the new act in the same manner as it did the first." 59 C.J. 926, 927.

And we see nothing in section 48–B of the city charter inconsistent with the requirements of the Municipal Finance Act. The right to credit any surplus remaining in any department at the end of the fiscal year to the general funds of the city, is not in any way inconsistent with the duty to apply net revenues of any enterprise of the city upon bonds issued in aid of such enterprise, and does not warrant "the crediting to a general fund account, of all revenues from water rents remaining at the end of the fiscal year after payment of strictly operating charges only," as appellees' brief admits has been the city's practice. It is clear, when the statutes are construed together, that provision should be made for payment of the amount due by way of principal or interest on bonds issued for a revenue-producing enterprise which has earned net revenues within the meaning of the statute, before any of such revenues are credited to the general fund account under the charter provision.

And we think that there is nothing in chapter 125 of the Private Laws of 1927 which deprives the bonds issued under that act of the right to participate in the revenues of public enterprises for which they are issued as prescribed by C.S. § 2959, as amended. Section 3 of this act merely provides that where bonds are issued under the act, a tax shall be levied annually upon property sufficient to meet the principal and interest thereof; and section 4 merely frees bonds to be issued under the act from limitations and restrictions imposed by other acts and provides that proceedings required by other acts shall not be required for the issuance of bonds thereunder. We see nothing in this which in any way absolves the city from applying the net revenues derived from the operation of a municipal enterprise upon the bonds issued for that enterprise, as required by C.S. § 2959, as amended.

Coming to the remedy to which complainants are entitled, we think that, as the law of North Carolina unquestionably provides that net revenues derived from the operation of the waterworks system shall be applied upon the bonds issued for the creation and enlargement of that system, complainants are entitled to an injunction against the city and its officials, restraining them from diverting such net revenues to other purposes, if it shall appear to be a fact upon the hearing, as alleged in the bill, that net revenues are being derived from the operation of the waterworks system and that the city is diverting or threatening to divert them to purposes other than the payment of the principal and interest on the bonds to which they should be applied. 44 C.J. 1160, 1175; City of Mobile v. Marx, supra (C.C.A.5th) 75 F.(2d) 569, at page 575; Tyler County v. Town (C.C.A.5th) 23 F.(2d) 371; Puget Sound Power & Light Co. v. City of Seattle (C.C.A.9th) 29 F.(2d) 254; Fazende v. City of Houston (C.C.) 34 F. 95; Hull v. Ames, 26 Wash. 272, 66 P. 391, 90 Am.St. Rep. 743.

We do not mean to say that the character of a trust fund attaches to the revenues of the water and sewer system until after the officers of the city have exercised the discretion vested in them with respect to such system and have paid "all expenses of operating, managing, maintaining, repairing, enlarging and extending" same and the net revenues for a given year have been determined, nor do we here attempt to decide what should be allowed as proper expenses of operation in determining what are the net revenues; but, if net revenues of operation remain, after all of these

payments have been made, it is the duty of the municipal authorities to apply them on the principal and interest of the waterworks bonds as required by the Municipal Finance Act, and such funds are thereafter held in trust to be applied as the statute directs, and any threatened diversion or misapplication should be enjoined. Coler v. Board of Com'rs (C.C.) 89 F. 257, 260, affirmed 190 U.S. 437, 23 S.Ct. 811, 47 L.Ed. 1126; Boynton v. Moffat Tunnel Improvement Dist. (C.C.A.10th) 57 F.(2d) 772; Thompson v. Emmett Irr. Dist. (C. C.A.9th) 227 F. 560, 566; Vickrey v. City of Sioux City (C.C.) 104 F. 164, 166. As the net revenues can be effectively diverted in advance of their ascertainment by diversion of the gross revenues, injunction should be granted to restrain the diversion of gross revenues, if it appears that the net revenues are in danger of being diverted in this way. If this is done, however, care should be taken to frame the injunctive order so as not to trench upon the discretion of the municipal authorities in the management of the water and sewer system, which the law commits to them and not to the courts.

■ If the court below shall be of opinion that the facts warrant the granting of injunctive relief, it may grant full relief in the premises, and, in doing so, determine the validity of the bonds, where their validity is questioned, may award a money judgment for such of the bonds and coupons as are due and owing, and may direct the proper application of such net revenues of the waterworks system as may be in the hands of the defendants. It may not, however, order the city officers to levy, assess, or collect taxes or·fix rates for the water system as prayed by plaintiffs, for this would be equivalent to awarding a writ of mandamus, an extraordinary legal remedy, which a court of equity never awards. Tyler County v. Town, supra (C.C.A.) 23 F.(2d) 371.

In holding that the net revenues of the waterworks system should be applied on the waterworks and sewerage bonds, we do not hold that such bonds are entitled to preferential payment over other bonds of the city, or that the city, after applying such net revenues on these bonds, should not so apply the moneys derived from taxation as to equalize the payments on all the bonds for which the credit of the city has been pledged. These are questions which are not before us and as to which we express no opinion.

For the reasons stated, the decree appealed from will be reversed, and the cause will be remanded for further proceedings in accordance with this opinion.

Reversed.