**John G. KEEGAN, et al., Plaintiffs,**

v.

**STEAMFITTERS LOCAL UNION NO. 420 PENSION FUND, et al., Defendants.**

**No. 00–CV–4246.**

United States District Court, E.D. Pennsylvania.

Nov. 19, 2001.

---

1. The record of proceedings before the Zoning Hearing Board shall be docketed.

 

Doris J. Dabrowski, Philadelphia, PA, for plaintiffs.

Kent Cprek, Sagot, Jennings & Sigmond, Philadelphia, PA, for defendants.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

In this action John Keegan ("Keegan"), Harry Instase ("Instase"), and Philip Garton ("Garton") (collectively "plaintiffs") have brought suit against Steamfitters Local Union No. 420 Pension Plan ("Pension Plan" or "Plan"), William T. Sweeney ("Sweeney"), the administrator of that plan [1], Mechanical Contractors Association of Eastern Pennsylvania ("Employer Association"), Steamfitters Local Union No. 420

---

1. While Defendant Sweeney was the plan administrator for much of the disputed period, Gerald Diviny is the current administrator of the Local 420 Pension Plan. Because the plaintiffs have made no specific allegations against Diviny, for purposes of this opinion, he will be included in discussion of the trustees as he owed similar fiduciary responsibilities. However, because specific allegations are made against Sweeney, he will be discussed separately.

("Local 420" or "Union"), the Trustees of the Local Union No. 420 Pension Plan ("Trustees")[2], United Association Local Union No. 322 Pension Plan, and Trustees of the Local Union No. 322 Pension Plan.[3] The trustees and administrators are named as individual defendants ("Individual Defendants"). Plaintiffs have instituted this action pursuant to 29 U.S.C. § 1132, the Employee Retirement Income Security Act ("ERISA") and claim that the defendants violated the law by breaching their fiduciary responsibilities owed under the act.

This action began when a complaint was filed on August 21, 2000. Plaintiffs allege that the defendant organizations and individuals breached their duties by failing to secure payments due under reciprocal agreements between two of the local unions, 322 and 420. They are seeking relief in the form of monetary contributions owed to the Local 420 Pension Plan and a declaratory judgment finding that the defendants breached their fiduciary duty and articulating their rights under the Pension Plan and under ERISA. Defendants answered the complaint on October 27, 2000. On April 26, 2001 the individual defen-

dants, Local 420, and the Employer Association filed a motion for partial summary judgment. The same day plaintiffs filed a motion for partial summary judgment. These motions are now before me.

## I. Factual Background

In general, the parties agree on the underlying facts. The three plaintiffs are all members of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("UA"). This association is comprised of a number of local affiliated organizations. At various times during the 1970s, plaintiffs became UA members and joined through Local 532.[4] Mr. Keegan became a member on October 31, 1974, Mr. Instase on November 11, 1978, and Mr. Garton on August 11, 1979. During the period of time that plaintiffs were members of Local 532, they performed jobs not only within the jurisdiction of 532, but also within the jurisdictions of Locals 322 and 121 (which subsequently merged with 322, who then took control of their pension assets as well).

2. The trustees of the Local 420 Pension Plan are divided into two groups. The union trustees include Joseph Rafferty, Joseph McMahon, Robert Page, and Samuel Slattery. The employer trustees include Jack James, William Sautter, and William Truskey. Additionally, the plaintiffs include Local Union No. 420 as a union trustee and the Mechanical Contractors Association of Eastern Pennsylvania as an employer trustee. While it is unclear if these organizations serve as trustees, because plaintiffs have brought suit against them as such, they will be included in any discussion of trustee liability.

3. Joseph Wilkins, James Reed, John Shaloo, Gary Forosisky, Dan Falasca, and Marvin Davidson are the trustees of the Local 322 Pension Plan.

4. The plaintiffs admit in their own depositions that prior to the consolidation of Locals 532

and 420 in 1984, they were members of Local 532. In their response to the defendants' motion for summary judgment, however, they indicate that they were effectively members of Local 420 dating back to their original UA membership. Though plaintiffs frame the disagreement in terms of a disputed issue of fact, it is actually a legal argument they are making. Plaintiffs essentially assert that when Local 532 merged with Local 420, all rights and benefits due under either plan should have been awarded as if the two locals had never been separate entities. Rather than a factual dispute, this is a question of law central to the merits of plaintiffs' case. As such, I will not consider it a disputed fact and for purposes of this motion, it is undisputed that the plaintiffs became members of Local 420 in 1984.

Plaintiff Instase also worked within the jurisdiction of Local 420 as early as 1980.[5]

In 1973, before plaintiffs began working at all, 420 and 322 had entered into an arrangement whereby 322 agreed to pay 420 for all contributions they received from employers for work performed by members of Local 420 while these employees were working in the territorial jurisdiction of 322. On January 1, 1978, 420 and 121 entered into a similar agreement. In relevant part, the reciprocal agreements state:

> The Trustees of U.A. Local Union No. 322 [and 121] agree to pay the Trustees of U.A. Local Union No. 420 all contributions paid to them and collected by them from Employers for the members of U.A. Local Union No. 420 while employed within the territorial jurisdiction of U.A. Local No. 322 [and 121] by a contributing Employer.

Local 532, to which the plaintiffs belonged at this point, had not entered into reciprocal agreements with any of the other unions.

Based on the information contained in the record, I assume that it is regular practice for the members of one local to perform work within the territory of a different local. The employers on these sites generally contribute funds to the pension plans of the local union as dictated by collective bargaining agreements, and it seems as divided by geography of the site, rather than the local affiliation of the workers. So, as long as they were members of 532, the plaintiffs may have worked within the jurisdiction of any number of local unions, and those locals received contributions from employers on the basis of work done, but the plaintiffs would not receive any of those funds unless the number of hours worked in another jurisdiction was sufficient to vest them in that local's pension plan. Because these contributions will be lost by the workers unless they "vest" with a particular plan by working a large number of hours in its jurisdiction, reciprocal agreements protect the interests of a member who works in a territorial jurisdiction not his own local's. The transfer of contributions ensures that the workers are compensated for all hours worked, regardless of vesting-as long as they eventually vest in the plan receiving contributions on their behalf.

On February 1, 1984, the plaintiffs all became members of Local 420 when their former local, 532, was merged into 420. Since that point, the plaintiffs have received contributions for all work they have performed in the jurisdiction of Local 322 (which absorbed 121) pursuant to the reciprocal agreement between Local 420 and Local 322. Plaintiffs, have not, however, received contributions for any work performed prior to 1984 within the jurisdictions of Locals 121, 322, or 420. In their depositions, the plaintiffs admitted that at the time of the merger, they had been advised that the contributions they earned while in 532 would not be coming into 420 with them.

Twelve years later, in 1996, Plaintiff Keegan requested that the credits he accumulated with 322, prior to 1984 and while a member of 532 be credited to his 420 pension fund. Keegan contacted Defendant Sweeney, the administrator of the 420 plan with this general request. Sweeney in turn contacted William Ford, the administrator of the 322 plan on November 26, 1996, and included an itemization of the

---

**5.** Though the plaintiffs are less clear in making and pursuing this point, they also appear to be seeking pension credits for those hours worked in Local 420 while the plaintiff was still a member of Local 532. Apparently only plaintiff Instase performed work in Local 420's jurisdiction prior to the merger and therefore it is only relevant to his claims.

hours Keegan worked and received contributions under Locals 121 and 322. On January 21, 1997, Ford responded to Sweeney's request and sent a check for $16,063.44, a pension credit covering the period between September 11, 1973 and January 1, 1984. The following week, Sweeney informed Keegan that he had received the credit from Local 322. Eight months later, on August 19, 1997, the Local 322 plan contacted Sweeney and indicating that they had made an error, requested that he return the $16,000 check. Approximately one week later, Sweeney returned this check to the Local 322 fund through their attorney.

When Plaintiff Garton retired in March 1999, he did not receive credit for any hours of service prior to February 1, 1984. No particular incident or harm is discussed concerning Plaintiff Instase beyond the general allegation that he has not received credit towards his pension for hours worked prior to joining Local 420.

## II. *Discussion*

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court must determine "whether the evidence presents a sufficient [factual] disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, the court has an obligation to consider the evidence and

draw all reasonable inferences in favor of the party who has not made the motion. *See Dici v. Com. of Pa.*, 91 F.3d 542, 547 (3d Cir.1996). The standard remains the same for cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir.1987). In addition to contesting the facts and conclusions presented by the moving party, when the nonmoving party " 'bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.' " *Foulk v. Donjon Marine Co., Inc.*, 144 F.3d 252, 258 n. 5 (3d Cir.1998) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n. 2 (3d Cir.1998)).

### B. Plaintiffs' Motion for Partial Summary Judgment

The plaintiffs have moved for partial summary judgment on liability and have asked the court to declare that the fiduciaries of Local 420 breached their duty to collect contributions from the Local 322 Fund owed to the plaintiffs under the reciprocal agreements, that the same fiduciaries breached their duty to act for the exclusive purpose of providing benefits to the participants, and to declare their rights under the Pension Plan and ERISA. Plaintiffs also ask that the trustees of the Local 322 Fund also be declared liable for failure to make these payments into the Local 420 Pension Plan. Because the defendants had a duty to secure or remit the pension payments under the terms of the reciprocal agreements, their failure to do so constitutes a breach. Plaintiffs' motion, however, presupposes that such a duty exists. Because it cannot be determined as a matter of law that a duty to obtain the funds in question exists, I will deny the plaintiffs' motion for summary judgment.

The key question raised by the plaintiffs' motion for summary judgment, and largely by this lawsuit in its entirety, is one of contractual interpretation. It is the plaintiffs' position that the reciprocal agreements entered into between Local 420 and Locals 322 and 121 apply retroactively, while the defendants contend these arrangements apply only prospectively.[6] As the plaintiffs understand these agreements, Keegan, Garton, and Instase are entitled to pension contributions for the hours they worked under the jurisdictions of Locals 322 and 121, even though they were not members of Local 420, but of Local 532, at the time they worked those hours. The defendants argue that the reciprocal agreements only apply to hours worked in those other jurisdictions while the union members were a part of Local 420, and have appropriately credited those hours.

On a motion for summary judgment, before I can decide that there was a breach of duty, the plaintiffs must establish as a matter of law that a duty existed. In an attempt to establish this duty, plaintiffs look to the terms of the reciprocal agreements. In part the agreements state that the "Trustees of U.A. Local Union No. 322 [and 121] agree to pay the Trustees of U.A. Local Union No. 420 all contributions paid to them ... for the members of U.A. Local Union No. 420." The plaintiffs have focused on the words "all contributions" and understand them to mean all contributions, regardless of whether or not

workers were members of Local 420 at the time they were earned. As they read the agreement, it is applicable "retroactively," and once they became members of 420, the hours earned while members of 322 should have been transferred to their funds, even though they would not have been entitled to them had they remained a part of Local 532.[7] The plaintiffs argue that the contract is not ambiguous, and that the word "all" simply means "all," regardless of other circumstances and therefore, the defendants had a duty to obtain those funds.

Defendants understand the reciprocal agreements differently. Where the plaintiffs interpret the agreement's silence concerning retroactivity as an inclusion, the defendants view this silence as ambiguous, at best, and therefore argue that the matter cannot be resolved on a summary judgment motion. On a summary judgment motion, all reasonable inferences must be granted in favor of the non-moving party. *See American Flint Glass Workers Union, AFL–CIO v. Beaumont Glass Company,* 62 F.3d 574, 578 (3d Cir.1995). Defendants argue that because it is reasonable to infer that the silence indicated that the agreement would not be applied retroactively, the court, cannot as a matter of law, decide that the reciprocal agreements apply retroactively.

If the language of a contract is clear and unambiguous on its face, then a court may not redefine its meaning through extrinsic evidence. *See Compass Technology, Inc. v. Tseng Laboratories,*

---

6. The term "retroactive" indicates the credits earned prior to membership in Local 420 and does not indicate application prior to the execution of the reciprocal agreement itself. While I recognize that its use may be slightly confusing, I will use it in this manner as the parties have adopted the retroactive/prospective distinction, and I lack a more appropriate one.

7. Because Local 532 did not have reciprocal agreements in place with any other U.A. Locals, the only way plaintiffs would have been entitled to those contributions was if they had worked sufficient hours in the jurisdictions of those other locals to vest in those plans. Plaintiffs do not argue that this is the case and therefore they would not have been entitled to those contributions had Local 532 remained a separate entity.

*Inc.,* 71 F.3d 1125, 1131 (3d Cir.1995). However, if the language of an agreement is not clear on its face, then the court may hold a trial in order to hear evidence and resolve the ambiguity. *See In Re: Unisys Corp.,* 58 F.3d 896, 901 (3d Cir.1995) (affirming the district court's decision to hold a trial concerning what they deemed to be ambiguous contract terms in determining if there had been a breach of fiduciary duty under ERISA). In the instant case, the meaning of the contract is ambiguous. While the plaintiffs vociferously argue that the court would be adding a term by making the agreement prospective only, this seems plainly wrong. There is nothing in the agreement itself that speaks to the timing of its application. While all might mean all, including hours worked prior to joining Local 420, it may just as easily mean all, from time of membership in Local 420 forward. On the face of the contract there simply is no answer.

Because the contract is ambiguous and it cannot be decided on summary judgment that the plaintiffs were actually entitled to the funds earned under the jurisdiction of Local 322, at this point, it is not necessary to reach the issue of whether the actions or inactions of the defendants constituted a per se breach of this hypothetical duty.[8] At the summary judgment stage, the plaintiffs have not met their burden of demonstrating that there is no existing issue of material fact. There is a fundamental dispute concerning the meaning of a contract and whether the reciprocal agreements even created a duty that the defendants were required to fulfill. Therefore, plaintiffs' motion for partial summary judgment, including a declaratory ruling that there was a breach of duty, will be denied.

### C. Defendants' Motion for Partial Summary Judgment

#### 1. Liability of the Individual Defendants for Failure to Collect Contributions

Plaintiffs assert liability exists for individual defendants William Sweeney and Gerald Diviny as the administrators of the Local 420 Plan; Joseph Rafferty, Joseph McMahon, Samuel Slattery, Jack James, William Sautter, and William Truskey as trustees of the Local 420 Pension Plan; and Joseph Wilkins, James Reed, John Shaloo, Gary Forosisky, Dan Falasca, and Marvin Davidson as trustees of the Local 322 Pension Plan. Additionally the Local Union No. 420 and the Mechanical Contractors Association of Eastern Pennsylvania are trustee defendants.[9] The defendants have moved for summary judgment on behalf of all of the individually named defendants on multiple grounds.[10]

In proffering their arguments for granting summary judgment in favor of the individual defendants, the defendants focus on the merits of the case. Their argument simply states that even if the claim is

---

**8.** This issue, however, is relevant on the defendants' motion for partial summary judgment and the validity of claims against the individual defendants, Local 420 as a union, and the Mechanical Contractors Association. Therefore it will be discussed infra.

**9.** Because the complaint and allegations are made against these organizations as trustees, they are included in any reference made to the "individual defendants."

**10.** While the defendants describe their motion as one for partial summary judgment, they are, in fact, moving for dismissal of all claims against these individual defendants, the U.A. Local Union No. 420, and the Mechanical Contractors Association of Eastern Pennsylvania. Their motion is partial only in that it excludes two of the defendants, the U.A. Local Union No. 420 Pension Plan and the U.A. Local Union No. 322 Pension Plan. These two parties have not moved for summary judgment.

procedurally sufficient, and even if there were a duty to obtain the funds, the action or inaction of the individual defendants does not constitute a breach of fiduciary duty as a matter of law. Because the reciprocal agreement was ambiguous, and the trustees adopted a particular interpretation of it, which later turned out to be wrong, but was reasonable, they cannot be held liable. The plaintiffs reject this notion and argue instead that the trustees had a duty to investigate all possible means of obtaining benefits for members of the pension plan and that their failure to even pursue the possibility of applying the reciprocal agreement was a breach of this duty. Because an ERISA trustee is expected to "use reasonable diligence to discover the location of the trust property and to take control of it without unnecessary delay," *Central States Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 572, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985) *quoting* Bogert & Bogert, *Law of Trusts and Trustees* at 355, in the eyes of the plaintiffs, the trustees had an obligation to explore the possibility that the reciprocal agreement could be applied retroactively.

 Once it has been determined that the reciprocal agreement was ambiguous on its face, the question becomes whether the individual defendants could be held liable for interpreting the contract in one particular way, and not considering other possible interpretations. ERISA employs the "prudent man" standard of care with regard to fiduciary duties. 29 U.S.C. § 1104 (2000). Therefore, the trustees must be judged on the basis of whether or not they acted "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with

like aims." 29 U.S.C. § 1104(a)(1)(B) (2000).

Apart from the bare assertion that defendants violated their duties by failing to investigate, the plaintiffs proffer no evidence indicating that the actions, or lack thereof, taken by the defendants deviated from this standard of care. Plaintiffs do not show that the reciprocal agreements are generally interpreted to apply retroactively. Similarly, the plaintiffs indicate that they had been expressly told their funds would not be carried over to Local 420. Even when considering the facts in the light most favorable to the non-moving party, the plaintiffs do not present a compelling claim for breach of duty against all of the individual trustees for a failure to collect or remit funds. Quite simply, they do not provide any basis from which it is possible to infer that defendants failed to act prudently. Though plaintiffs argue that the reciprocal agreements were abundantly clear in requiring the defendants to pay or receive the contributions of their behalf, this assertion is unsupported by the evidence. Once it is determined that the contract was actually ambiguous, the defendants need only demonstrate that their conduct was aligned with that of a "prudent man" when they chose to adopt a particular contractual interpretation. Here the individual defendants management of the fund appears wholly consistent with a reasonable interpretation of an ambiguous contract. Therefore summary judgment will be granted on behalf of the individual defendants on this ground with regard to the plaintiffs' claim that the failure to obtain or remit funds constituted a breach of fiduciary duty.

Defendants offer other arguments in an attempt to persuade the court that it is appropriate to grant summary judgment in their favor. Most of these arguments are procedural in nature and involve careful

interpretation of ERISA and the applicable statute of limitations.[11] While these arguments vary in their persuasiveness, they need not be addressed in the instant case. Because I find that as a matter of law, the individual defendants did not breach their fiduciary duties in failing to collect or remit payments pursuant to the reciprocal agreements, I do not reach any decision concerning the merits of these additional claims. Assuming plaintiffs' claims are procedurally perfect, they still have not presented sufficient evidence to survive the individual defendants' motion for summary judgment.

### 2. Liability of Co–Trustees for Administrator's Breach of Duty

In addition to the primary claim that the trustees were negligent for failing to collect or remit funds as required by the reciprocal agreements, the plaintiffs also claim that the trustees of Local 420 are liable for the breach committed by the administrator of that plan, Sweeney, when he returned the check for Keegan's contributions to the Local 322 Pension Plan without conducting a proper and thorough investigation. The individual defendants have moved for summary judgment on this claim. With the exception of defendant Sweeney, who actually returned the check, I will grant this motion.

 Under ERISA the defendants cannot be held personally liable for money damages absent a showing of individual misconduct. See 29 U.S.C. § 1132(d)(2) (2000). This, however, does not preclude a court from providing plaintiffs with declaratory and injunctive relief if the defendants breached their fiduciary duties. This liability can include responsibility for breaches of co-fiduciaries but only if the defendant fiduciary participated in or concealed the breach, knew of the breach and did nothing to remedy it, or failed to satisfy his or her own responsibilities under § 1104 of ERISA, which in turn enabled the acting fiduciary to commit a breach. See 29 U.S.C. § 1105(a) (2000).

Here, the plaintiffs do not allege that the defendant trustees knowingly participated in the return of the check or concealed the alleged breach once they became aware of it. Sweeney specifically states that he did not actually consult with the trustees prior to returning the contribution check. Plaintiffs must therefore demonstrate, and indeed argue, that the trustees failed to satisfy their own responsibilities which enabled Sweeney to breach his own duty by returning the check. Had they had appropriate procedures and methods in place for insuring that payments owed under the reciprocal agreements were made to the pension plan, Sweeney would not have been able to return the $16,000 check before complying with those procedures. In essence, the absence of those safeguards, which the trustees failed to enact, enabled Sweeney to breach his duty to Keegan.

Plaintiffs again rely on the assumption that the contract clearly required that the contributions be paid retroactively and make fundamentally the same argument they make with regard to the initial breach

---

**11.** These other arguments include: (1) plaintiffs' claim cannot be sustained under ERISA because the statute does not permit the recovery of money damages from individual defendants; (2) a beneficiary looking to recover benefits must sue the plan rather than individual employees or trustees of the plan; (3) defendants cannot be found liable under ERISA because the alleged breeches occurred either before or after these individuals served as trustees; (4) the applicable state statute of limitations bars the plaintiffs' breach of contract claims; and (5) under ERISA, the plaintiffs' claims are not timely when the 6 year statute of limitations for breach of fiduciary duties is applied to the facts of the case.

of duty claim. However, as discussed above, the plaintiffs have not presented sufficient evidence to support their claim that the individual defendants breached their fiduciary responsibilities. They adopted and acted upon a reasonable interpretation of an ambiguous contract. All prospective contributions had been made to the plaintiffs' plans. There was no system in place for considering retroactive claims because the defendants, acting reasonably and in good faith, did not believe those monies were owed. Absent any breach of fiduciary duty, the trustees of the Local 420 Pension Plan do not meet the ERISA requirements for finding liability for a breach by a co-fiduciary. Therefore, summary judgment may be granted in favor of the defendant trustees of the 420 Plan with regard to the plaintiffs' second claim.

### 3. Liability of Defendant Sweeney for Returning the Contribution Check

 The only specific incident cited by the plaintiffs involves the return of the check for Keegan's contributions to the Local 322 Pension Plan by defendant Sweeney, the administrator of the Local 420 Plan. The defendants argue that Sweeney is entitled to summary judgment in his favor. While the plaintiffs argue that Sweeney breached his fiduciary duty by returning the check to Local 322 without conducting any investigation, the defendants assert that Sweeney's good faith administration based on legal advice is not a breach of fiduciary duty as a matter of law. The plaintiffs claim that because Sweeney failed to review the reciprocal agreement before returning the funds and relied exclusively on the representations from the trustees and lawyers of Local 322 he breached his fiduciary duty. Defendants, however, contend that Sweeney consulted with his legal counsel prior to returning the check and that in doing so, insulated himself from liability by complying with the prudent man standard prescribed by ERISA. Because Sweeney's liability hinges in part on a disputed issue of material fact, I will deny defendants' motion for summary judgment as it pertains to defendant Sweeney's return of the $16,000 check.

Plaintiffs properly point out that Sweeney presents conflicting evidence concerning the timing of when he sought legal advice. At one point in his deposition he indicated that he had not consulted Local 420's counsel prior to returning the check and did not do so until he received an inquiry from the plaintiffs' attorney the following year. While conveniently avoiding commenting on the timing of Sweeney's inquiry, the defendant asserts that he sought out legal advice in regard to the plaintiffs' rights under the plan. Though obtaining legal advice will not necessarily shield a fiduciary from liability, whether or not such advice was sought is certainly a relevant factor in determining if a duty was breached.[12] Because the parties dispute the material facts surrounding the return of the check, it is not appropriate to grant the defendants' motion for summary judgment on this matter.

Sweeney is, however, included in the group of defendants released from this action in relation to a breach of duty for failure to collect the contributions allegedly owed. While there was no breach of duty for failure to collect as a matter of

---

12. The defendants do not raise the argument that even if Sweeney did not consult with counsel and made a unilateral decision to return the check he cannot be found liable as a matter of law. Instead they choose to rely on the assertion that he did consult with an attorney before taking any action, a disputed material fact. Because they have not raised it, I have not considered the alternative argument.

law, the return of the check constitutes a distinct action. Once a contribution had been paid into the Local 420 Pension Fund separate and distinct duties may have arisen with regard to the return of the check. Because the parties present differing versions of the events surrounding the alleged legal consultation and the timing of its occurrence, summary judgment must be denied with regard to this claim.

### III. Conclusion

The plaintiffs' motion for summary judgment will be denied. Because the contracts at the center of this dispute does not indicate whether or not it applies to credits earned prior to the date of membership in Local 420, it cannot, as a matter of law be determined that there even was a duty to be breached. The parties must present additional evidence of course of conduct, prior dealings, and general practice with regard to reciprocal agreements in order to determine the obligations and entitlements under the reciprocal agreements.

The defendants' motion for summary judgment will be granted in part and denied in part. With regard to the failure to remit or collect payments, summary judgment will be granted as to all individual defendants. Because the contract is ambiguous and the defendants adopted a reasonable interpretation of the agreement, as a matter of law, they did not deviate from the prudent man standard used in ERISA cases. Similarly, summary judgment will be granted in favor of all individual defendants with regard to the claim of liability for the actions of their co-fiduciary, Sweeney, because again they relied on a reasonable interpretation of the ambiguity in the contract and committed no breach enabling Sweeney to breach his own fiduciary obligations.

Summary judgment, however, will not be granted in favor of defendant Sweeney with regard to the return of the $16,000 check. It cannot be determined at this time as a matter of law that Sweeney did not breach his fiduciary duty by returning the check without seeking legal advice. The dispute about his alleged failure to investigate renders summary judgment inappropriate as it indicates that issues of material fact remain outstanding.

### ORDER

**AND NOW,** this 19th day of November 2001, it is **ORDERED** that:

(1) Plaintiffs' motion for partial summary judgment (docket entry # 11) is **DENIED;**

(2) Defendants' motion for partial summary judgment (docket entry # 9) is **GRANTED** as to defendants, Gerald J. Diviny, Joseph T. Rafferty, Joseph McMahon, Samuel T. Slattery, Jack H. James, William R. Sautter, William C. Truskey, Mechanical Contractors Association of Eastern Pennsylvania, Steamfitters Local Union No. 420, Joseph Wilkins, James Reed, John Shaloo, Gary Forosisky, James Falasca, and Marvin Davidson. All of the above-named defendants are **DISMISSED** from the suit;

(3) Defendants' motion for partial summary judgment (docket entry # 9) is **DENIED** as to defendant William T. Sweeney to the extent plaintiffs' claim involves the return of funds to the Local 322 Pension Plan. The motion is **GRANTED** as to defendant William T. Sweeney with regard to all other claims; and

(4) The remaining defendants are the United Association of Local Union No. 420 Pension Plan and the United Association Local Union No. 322 Pension Plan with regard to all claims and defendant William

T. Sweeney for limited claims, articulated in this order.