

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-26-2003

# Keegan v. Steamfitter Local420

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3312

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Keegan v. Steamfitter Local420" (2003). *2003 Decisions.* Paper 430.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/430

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-3312

_____

JOHN G. KEEGAN;
HARRY F. INSTASE;
PHILIP C. GARTON,

Appellants

v.

STEAMFITTERS LOCAL UNION NO. 420 PENSION PLAN; WILLIAM T.
SWEENEY; GERALD J. DIVINY, Administrators of the Steamfitters
Local Union No. 420 Pension Plan; JOSEPH T. RAFFERTY;
JOSEPH MCMAHON; SAMUEL T. SLATTERY; JACK H. JAMES; WILLIAM
R. SAUTTER; WILLIAM C. TRUSKEY, Steamfitters Local Union
No. 420; MECHANICAL CONTRACTORS ASSOCIATION OF EASTERN PA;
TRUSTEES OF THE STEAMFITTERS LOCAL UNION NO. 420 PENSION
PLAN; THE UNITED ASSOCIATION LOCAL UNION NO. 322 PENSION
PLAN; JOSEPH WILKINS; JAMES REED; JOHN SHALOO; GARY
FOROSISKY; JAMES FALASCA; MARVIN DAVIDSON, Trustees of the
U.A. Local Union 322 Pension Plan

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 00-cv-04246)
District Judge: Honorable Anita B. Brody

_____

Argued April 23, 2003

Before: SCIRICA*, Chief Judge, AMBRO and WEIS, Circuit Judges

_____
*Judge Scirica began his term as Chief Judge on May 4, 2003

(Opinion filed: June 26, 2003)

Doris J. Dabrowski (Argued)
1500 Walnut Street, Suite 900
Philadelphia, PA 19102

      Attorney for Appellants

Kent Cprek (Argued)
Jennings Sigmond
510 Walnut Street
The Penn Mutual Towers, 16th Fl.
Philadelphia, PA 19106-3683

      Attorney for Appellees

Regina Reardon
3031 B. Walton Road
Plymouth Meeting, PA 19462

      Co-counsel to Local 322 Plan
      and its fiduciaries

Henry J. Donner
Jacoby & Donner
1515 Market Street, Suite 2000
Philadelphia, PA 19102

      Co-counsel to Local 420 Plan
      and its fiduciaries and Mechanical
      Contractors Assn. of Eastern PA,
      Inc.

---

OPINION

---

AMBRO, Circuit Judge

The plaintiff union members sued the defendant union pension funds (and the funds'

administrators) alleging a breach of fiduciary duty and seeking a declaratory judgment that the

2

plaintiffs were entitled to pension credits they allegedly had accrued years earlier. The District Court, after ruling on dispositive motions and conducting a bench trial, entered judgment for the defendants. The plaintiffs appeal. We affirm.[1]

I.

The plaintiffs in this suit are John Keegan, Harry Instase, and Philip Garton. The defendants are the Steamfitters Local Union No. 420 Pension Plan ("Local 420 plan"); William T. Sweeney, the administrator of the Local 420 plan; the Mechanical Contractors Association of Eastern Pennsylvania; the Steamfitters Local Union No. 420 ("Local 420"); the trustees of the Local 420 plan; the United Association Local Union No. 322 Pension Plan ("Local 322 plan"); and the trustees of the Local 322 plan. The plaintiffs filed suit pursuant to 29 U.S.C. § 1132, the Employee Retirement Income Security Act ("ERISA"), and claim the defendants violated ERISA by breaching their fiduciary duties thereunder.

At various times in the 1970s, the plaintiffs became members of Leadburners Local Union No. 532 ("Local 532"), but subsequently also worked at times within the jurisdiction of Plumbers and Pipefitters Local Union No. 322 ("Local 322") and Plumbers and Steamfitters Local Union No. 121 ("Local 121"). In 1973, Locals 420 and 322 entered into arrangements whereby Local 322's pension plan agreed to pay Local 420's plan for all contributions Local 322's plan received from employers for work performed by members of Local 420 while in the jurisdiction of Local 322. In 1977, Locals 420 and 121 entered into a similar agreement. (Local 121 later merged with Local 322, which assumed control of Local 121's pension assets.) Local 532 – the plaintiffs' local – had not entered into any reciprocal agreements with other unions nor

---

[1]We have jurisdiction pursuant to 28 U.S.C. § 1291.

3

did it have any pension plan of its own. Its members thus received pension benefits only through work sufficient to vest and receive benefits under the pension plan established by another local union and employers pursuant to the collective bargaining agreement.

On February 1, 1984, Local 532 merged with Local 420, thus making the plaintiffs members of Local 420. At that time, none of the plaintiffs had completed the requisite ten years of service to vest under the Local 322 or 121 pension plans and therefore they forfeited all service credits and benefits. At a meeting to introduce new members to Local 420, a union representative informed those present, including the plaintiffs, that pre-1984 contributions for those employed in Local 322's territory contributions would not be reciprocated. Thus, while post-merger the plaintiffs received contributions for work they performed within the jurisdiction of Local 322 pursuant to the reciprocal agreement between Locals 420 and 322, they did not receive contributions for any work performed pre-merger while members of Local 532 but working within the jurisdictions of 121, 322, or 420.

In 1996, Keegan asked Bill Sweeney, the administrator of the Local 420 plan, if credits that Keegan had accumulated prior to 1984 – while a member of Local 532 but working in Locals 322 and 121 – could be transferred to his Local 420 pension fund. Sweeney passed the request on to William Ford, the administrator of the Local 322 plan, including an itemization of the hours Keegan had worked in Locals 121 and 322. On January 21, 1997, Ford sent Sweeney a check for approximately $16,000 to cover the period between September 11, 1973, and January 1, 1984. Sweeney informed Keegan that he had received credit from Local 322. Eight months later, Local 322 informed Sweeney that it had made a mistake, that Keegan's break-in-service from Local 322 after less than ten years meant he was not vested. Local 322 requested the return of the check, which Sweeney returned to Local 322 via its attorney.

4

The plaintiffs filed their complaint in the Eastern District of Pennsylvania on August 21, 2000, alleging that the defendants breached their duties by failing to secure payments due under reciprocal agreements between Locals 322 and 420. They seek relief in the form of monetary contributions to the Local 420 plan and a declaratory judgment (i) that the defendants breached their fiduciary duty and (ii) articulating their rights under ERISA. In April 2001 both sides moved for partial summary judgment. The District Court denied the plaintiffs' motion and granted in part that of the defendants. It dismissed a number of defendants, but denied their motion for summary judgment as to the Local 420 pension plan, the Local 322 pension plan, and Sweeney. *Keegan v. Steamfitters Local Union No. 420 Pension Fund*, 174 F. Supp. 2d 332 (E.D. Pa. 2001) (*Keegan I*).

On July 1, 2002, the District Court conducted a bench trial to determine the meaning of the reciprocal agreements between the pension plans and whether Sweeney had breached his fiduciary responsibilities under ERISA. It entered judgment in favor of all remaining defendants on all remaining claims. *Keegan v. Steamfitters Local Union No. 420 Pension Fund*, 211 F. Supp. 2d 632 (E.D. Pa. 2001) (*Keegan II*). The plaintiffs timely appealed.[2]

II.

A. Fiduciary Duty to Investigate

The plaintiffs argue that the District Court erred in concluding that Sweeney did not breach his fiduciary duties under ERISA by failing to review or discuss with Keegan the

---

[2]When reviewing an appeal from a bench trial, "[w]e accept the trial court's finding of historical or narrative facts unless clearly erroneous, but exercise 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (internal citation omitted).

reciprocal agreements before returning the check to the Local 322 plan. According to Keegan, although he never mentioned the reciprocal agreements in making his request, Sweeney had a fiduciary duty to investigate and inform him about them. According to Sweeney, the opposite is true; because Keegan only asked him about obtaining the credits, there was no reason for him to inquire into the reciprocal agreements.

The District Court adopted the factual basis of each sides' position – that no one discussed the reciprocal agreements – and agreed with Sweeney's defense. *Keegan II*, 211 F. Supp. 2d at 644 (stating that when Keegan asked Sweeney about having his pension credits transferred from Local 322, "[h]e did not mention the reciprocal agreements"). But, exhibit 20 in the record is a November 26, 1996, letter from Sweeney to Ford that states: "Mr. Keegan is requesting that *since there was no reciprocal agreement* between Local's #322 and #532, if it would be permissible to have those accrued pension benefit[s] transferred into his Local #420 account." (Emphasis added). This indicates that Keegan was aware of the reciprocal agreements, did understand that they operated to bar the automatic transfer of contributions between Locals, did inform Sweeney of this fact, and Sweeney did act on this understanding to inquire about an alternate avenue to secure the credits. Thus the factual finding on this point appears to be clearly erroneous. Though we set aside this finding, we nonetheless affirm on the alternate ground that Sweeney properly discharged his fiduciary duty by addressing the reciprocal agreements in his inquiries on Keegan's behalf.

We also believe the District Court correctly concluded that Sweeney's actions did not, as a matter of law, constitute a breach of fiduciary duty. As noted by the District Court:

> Fiduciary status gives rise to the obligation to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of

6

a like character and with like aims."

*Keegan II*, 211 F. Supp. 2d at 644 (quoting 29 U.S.C. § 1104(a)(1)(B)).  When an ERISA beneficiary has requested information from an ERISA fiduciary, a fiduciary's obligation to convey complete and accurate information that is material to the beneficiary's circumstances includes "not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful."  *Bixler v. Cent. Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993).  *See also Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747 (D.C. Cir. 1990).  Even if we adopt the District Court's finding that Sweeney never referenced the reciprocal agreement, there was no breach of fiduciary duty because his actions *initially were successful*.  Keegan asked Sweeney to obtain the transfer of his pension credits, which Sweeney did.  It would not have been necessary (nor logical) for Sweeney to explain to Keegan why the reciprocal agreements should have, but did not, bar him from receiving the pension credits.  It was only later, after officials from Local 322 explained why Keegan had no legal entitlement to the credits – he was not vested in Local 322's plan – that Sweeney returned the check.  To find error in that action, Keegan must establish that Sweeney had a fiduciary duty to refuse to return a check that another Local reasonably explained was issued in error.  Keegan has not done so.  Accordingly, we agree with the District Court that Sweeney's actions complied with ERISA's prudent man standard of care.

B.  Interpretation of the Reciprocal Agreement

The plaintiffs' second issue on appeal concerns the District Court's interpretation of the reciprocal agreements between the pension plans of Local 420 and Locals 322 and 121.  The parties agree that the plans and agreements, which predated 1984, are subject to the requirements of ERISA, and that courts should apply general principles of contract interpretation to determine

7

if a plaintiff may recover benefits due under the terms of a plan. Accordingly, if the contract's language is unambiguous, a court may not consult extrinsic evidence to redefine its meaning. But if the terms are ambiguous, it may hold a trial to hear evidence and resolve the ambiguity.

In relevant part, the reciprocal agreements state:

> The Trustees of U.A. Local Union No. 322 [and 121] agree to pay the Trustees of U.A. Local Union No. 420 all contributions paid to them and collected by them from Employers for the members of U.A. Local Union No. 420 while employed within the territorial jurisdiction of U.A. Local No. 322 [and 121] by a contributing Employer.

*Keegan I*, 174 F. Supp. 2d at 335. The plaintiffs became members of Local 420 on February 1, 1984. Prior to that date they were members of Local 532, which had neither a pension plan nor reciprocal agreements with other Locals. Nevertheless, they argue that the reciprocal agreements entered into between Local 420 and Locals 322 and 121 apply prior to February 1, 1984, for Local 532 members, while the defendants contend that these arrangements apply only prospectively from February 1, 1984.

The plaintiffs construe the term "all contributions" in the agreement to mean all contributions regardless whether workers were members of Local 420 at the time they were earned. Under this reading, the agreement applies retroactively so that once the plaintiffs became members of Local 420 in 1984, the hours earned while members of Local 532 working in Local 322's territory should have been transferred to their accounts with Local 420, even though they would not have been entitled to these credits had they remained members of Local 532. (An exception would occur if they worked sufficient hours annually in Local 322's territory for ten years, at which point their credits would vest directly in Local 322's fund.)

The District Court initially denied summary judgment to the plaintiffs on the ground that the term "all contributions" was ambiguous as to retroactive application. But after the bench

8

trial, the Court concluded that the agreements were not intended to apply retroactively. In so doing, it noted that relevant factors in interpreting an ambiguous contract include the general practice, custom, or usage in a particular industry and that courts may consider the expectations of the beneficiaries of the plan and the intent of the contracting parties. The Court found that industry custom weighs strongly in favor of finding that the reciprocal agreements do not apply retroactively. Three pension plan administrators, including Sweeney, testified that they had never seen a reciprocal agreement applied to contributions for a time period prior to the date an individual became a participant in a fund. An actuary testified to the administrative and financial reasons why retroactive application would have a "devastating" effect on a fund. In short, it would be impossible to know the plan's future liabilities, as a sudden withdrawal to make retroactive payments could render a fund unable to honor its outstanding debts and obligations.

In contrast, the plaintiffs did not offer a single example of a retroactive reciprocal agreement to rebut the defendants' testimony. Instead, the plaintiffs pointed to a clause in the agreement that expressed the trustees' desire to "keep the employees of each Pension Trust Fund eligible for benefits if possible." The District Court found that nothing in this statement implies retroactivity; it merely indicates an aspiration to maintain employees' eligibility. That the trustees pledged to do so *if possible* indicates a possibility of forfeiture. Finally, the District Court noted that the plaintiffs' public policy argument – a prospective interpretation of the reciprocal agreements would result in forfeiture, a result disfavored by law – was unavailing because the plaintiffs never had a vested interest in a pension credit with the Local 322 plan.

On appeal the plaintiffs proceed with the same strategy they waged unsuccessfully before the District Court; *i.e.*, they advance conclusory assertions that the reciprocal agreements, unless

9

interpreted retroactively, are contrary to various tenets of public policy. The only argument specifically alleging error is their claim that the District Court improperly elevated industry practice to defeat other, more conventional methods of contract interpretation.

We are not persuaded. The plaintiffs correctly note that courts adhere to the maxim that "evidence of trade practice and custom does not trump other canons of contract interpretation, but rather cooperates with them." *Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 753 (Fed. Cir. 1999). The plaintiffs focus on the first part of the statement but ignore the second, qualifying clause. "A contracting party cannot, for example, invoke trade practice and custom to create an ambiguity where a contract was not reasonably susceptible of differing interpretations at the time of contracting. Trade practice evidence is not an avenue for a party to avoid its contractual obligations by later invoking a conflicting trade practice." *Id.* at 752.

But this aside, the plaintiffs cannot reasonably claim that the reciprocal agreements unambiguously require retroactive application. Indeed, it is the plaintiffs who offer a strained interpretation of the term "all contributions." It was only after the District Court denied the plaintiffs' motion for summary judgment on the ground that this language was ambiguous that the defendants offered testimony that it was unanimous industry practice for reciprocal agreements to operate only prospectively.

"[A] court should accept evidence of trade practice only where a party makes a showing that it relied reasonably on a competing interpretation of the words when it entered into the contract," because "[w]ithout such a showing, evidence that some practitioners customarily accomplish tasks differently from the manner called for by the contract will not overcome the clear language of the contract." *Id.* "This requirement helps insure that the evidence of trade

10

practice and custom truly reflects the intent of the contracting party, and avoids according undue weight to that party's purely *post hoc* explanations of its conduct." *Id.* Yet the plaintiffs overlook the fact that the plaintiffs are not a contracting party to the reciprocal agreements; they are third-party beneficiaries. To that end, the two contracting parties, the administrators of the Local 420 and 322 plans, both proffer the shared understanding that the reciprocal agreements do not apply retroactively.

In sum, the District Court did not err in accepting evidence of trade practice. Even if it did, this would not amount to reversible error, as the testimony on industry custom was only one of the stated justifications for the District Court's holding. Ultimately, the plaintiffs have not introduced any evidence that demonstrates they had an enforceable interest in the Local 322 fund or that supports their interpretation of the reciprocal agreements as requiring retroactive application.

* * * * *

For the reasons given, we affirm the decision of the District Court.

_____

TO THE CLERK:

Please file the foregoing Opinion.

By the Court,

_____/s/Thomas L. Ambro_____
Circuit Judge

11