**UNITED STATES of America,**
**Plaintiff,**

v.

**Hugh D. SUMMERS, Defendant.**

**Civil Action No. 02–1812.**

United States District Court,
E.D. Pennsylvania.

March 27, 2003.

Charles M. Flesch, Christopher R. Zaetta, Washington, DC, for Plaintiff.

Gregory R. Noonan, Walfish & Noonan PC, Norristown, PA, Jerry Arthur Jewett, Fremont, OH, for Defendant.

### MEMORANDUM

RUFE, Judge.

This is a civil action brought by the United States of America ("United States") to reduce to judgment federal tax assessments made against Defendant Hugh Summers for the years 1985, 1986, 1988, and 1989. Presently before the Court is the United States' Motion for Summary Judgment, Defendant Hugh Summers' Motion to Dismiss for Lack of Subject Matter Jurisdiction, and the United States' Motion to Dismiss Hugh Summers' Counterclaims. For the reasons set forth below, the United States' Motion for Summary Judgment is granted, Defendant Hugh Summers' Motion to Dismiss for Lack of Subject Matter Jurisdiction is denied, and the United States Motion to Dismiss Hugh Summers' Counterclaims is granted.

### I. BACKGROUND

On May 6, 1992, the United States filed a criminal information with the United States District Court for the District of Massachusetts charging Hugh Summers ("Summers") with Conspiracy to defraud the United States (Internal Revenue Service) by concealing and diverting income in violation of 18 U.S.C. § 371. More specifically, the criminal information charged that Defendant Summers worked as a sales agent in the flavoring industry [1] during the years 1985, 1986, 1988 and 1989. During this time, Summers instructed employers to make commission checks payable to a corporation named Coastal Development. Summers then caused Coastal to make counterfeit loans to him, which actually represented his commission monies earned when employed as a sales agent in the flavoring industry. In 1992, Summers pleaded guilty to the criminal information and acknowledged and agreed that he received unreported taxable income in the amount of $963,000.00 between the years 1982 and 1990. On May 24, 1993, Summers was sentenced pursuant to his guilty

---

**1.** The flavoring industry generally includes bakeries, confectioneries, macaroni and pasta companies, oil and grease producers, alcohol companies, wineries and breweries. It appears that Summers represented certain companies within this industry.

plea and a judgment in the criminal case was entered against him.[2]

As part of the guilty plea agreement, Summers acknowledged that he would be required to make a good faith effort to pay his tax liability. Summers then filed an amended Federal Form 1040X income tax return for tax years 1982 through 1990. These amended tax forms indicated that Summers owed taxes to the federal government in an amount totaling $225,734.00. On November 8, 1993, a delegate of the Secretary of the Treasury assessed income tax liabilities against Summers for tax and interest for tax years 1985, 1986, 1988, and 1989. Notice of this assessment and a demand for payment were sent to Summers by the Internal Revenue Service ("IRS") at the time of said assessments. On June 1, 1995, the IRS sent Summers a Notice of Deficiency, based in part on his amended returns, for additional unpaid income taxes and for civil fraud penalties. The deficiency in unpaid income taxes alone exceeded $200,000.00.

Summers then filed for Chapter 7 Bankruptcy on October 9, 1998. In turn, the United States filed a complaint to determine the dischargeability of Summers' income tax liabilities. On January 11, 2001, the Bankruptcy Court determined that Summers' tax liabilities were not dischargeable because he acted willfully in his effort to conceal and divert income.

The United States filed the instant Complaint on April 3, 2002 to reduce to judgment federal tax assessments previously made against Summers.[3] The United States filed the instant motion for summary judgment. Summers responded to the United States' motion and filed a motion to dismiss for lack of subject matter jurisdiction.[4] Both parties have responded to the respective motions, and the motions are now are ripe for review and disposition.

The Court will first address the United States' Motion for Summary Judgment and Summers' Motion to Dismiss in tandem in Part III. The Court will then turn to the United States' motion to dismiss Summers' counterclaims.

## II. *STANDARD FOR SUMMARY JUDGMENT*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the case under the governing substantive law. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All facts submitted to the court "must be viewed in the light most favorable to the non-moving party." *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir.1987). "This standard does not change when the issue is presented in the context of cross-motions for

---

2. As part of the plea agreement, the Office of the United States Attorney for the District of Massachusetts consented to the transfer of this case, for purposes of pleading guilty and disposition, to the United States District Court for the Eastern District of Pennsylvania. This case was transferred to the Eastern District of Pennsylvania on January 25, 1993.

3. This case was randomly reassigned to the calendar of this Judge on July 10, 2002.

4. Summers' Motion to Dismiss for Lack of Subject Matter Jurisdiction is more properly construed as a cross motion for summary judgment. *See* Fed.R.Civ.P. 12(c) (explaining that if matters outside the pleadings are presented and considered by the court, the motion shall be treated as a motion for summary judgment). Accordingly, Rule 56 provides the proper standard for analyzing Summers' instant motion.

summary judgment." *Id.* Moreover, "preclusion arguments are appropriate for resolution on motions for summary judgment." *Sibert v. Phelan,* 901 F.Supp. 183, 185–86 (D.N.J.1995).

## III. DISCUSSION

The United States contends that it is entitled to judgment as a matter of law because, *inter alia,* timely assessments of taxes were made against taxpayer Summers. On the other hand, Summers seeks a denial of the United States' motion for summary judgment and argues that this Court lacks subject matter jurisdiction because the IRS did not provide him with (1) notice of assessments and demand for payments and (2) a notice of deficiency for taxes owed. Even viewing the facts in a light most favorable to Summers, this Court finds Summers' arguments unpersuasive.

### A. Timely Assessment and Presumption of Correctness

As an initial matter, it is important to note that "notice and demand is unnecessary when the Internal Revenue Service files a civil action for reduction of an assessment to judgment." *United States v. Singer,* No. Civ.A.00–4840, 2001 WL 964144, at *2 (E.D.Pa. Aug.21, 2001) *aff'd,* 43 Fed.Appx. 524 (3d Cir.2002). Notice and demand is, however, necessary if, as is the case here, the United States seeks to recover interest and penalties. *Id.* The United States establishes a prima facie case against a taxpayer when it shows that a timely assessment is made. *Psaty v. United States,* 442 F.2d 1154, 1159 (3d Cir.1971) (explaining that a presumption of correctness is afforded to the Commissioner's assessments).

Instantly, the United States has satisfied this burden by providing a proper Certificate of Assessment. *See* The United States Certificate of Assessments, Payment, and Other Specified Matters, attached to United States' Motion for Summary Judgment at Ex. 4. The Certificate of Assessment and Payments is afforded a presumption of correctness and is proof that a timely assessment has been made against the taxpayer. *Singer,* 2001 WL 964144, at *2.[5] Summers simply fails to rebut the United States' prima facie case and provides no evidence supporting his claim that he is not liable for the assessments made against him. *See id.* (explaining that taxpayer bears the burden of proving by a preponderance of the evidence that the taxes are not due). In kind, Summers' generic tax protestor arguments, (*i.e.* that his compensation and salary are not considered gross income as defined by the code; that the IRS lacked a proper delegation to issue a certificate of assessment, etc.), fail to persuade this Court as they are another attempt made by Summers to evade the taxes for which he has admitted liability on several occasions.[6] For instance, Summers admitted that he owed the taxes for his unreported income when he: (1) pleaded guilty to the criminal information, (2) signed the guilty plea, and (3) filed amended tax forms acknowledging certain tax amounts owed to the United States.

### B. Summers' Guilty Plea

In further support of Summers' tax liability, Summers entered a guilty plea where he acknowledged and agreed that between 1982 and 1990 he received approximately $963,000.00 in unreported in-

---

5. Due to Summers' self-reported income tax liabilities for 1988 and 1989 on his amended tax returns, *see infra* III.C., a notice of deficiency is not warranted for these amounts.

6. Interestingly, although the majority of Summers' memoranda consists of these type of arguments, Summers provides no corroborating evidence of such claims.

come. In the case sub judice, Summers is estopped from denying his civil liability for taxes owed.

 "The doctrine of collateral estoppel or issue preclusion has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party ... and of promoting judicial economy by preventing needless litigation." *American Int'l Airways, Inc. v. American Int'l Group,* No. Civ.A.90–7135, 1992 WL 97829, at *1 (E.D.Pa. May 1, 1992). As a general matter, the party wishing to invoke issue preclusion must establish that:

> (1) the issue decided in the prior adjudication was identical [to] the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was party [to] or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in the prior action.

*Id.* Even still, a more stringent standard is applied when a party wishes to invoke collateral estoppel based on a prior guilty plea. Accordingly, a "court must examine the record of the criminal proceedings or plea colloquy to determine what issues were comprehended and decided." *State Farm Mut. Auto. Ins. Co. v. Rosenfield,* 683 F.Supp. 106, 108 (E.D.Pa.1988). Hence, "collateral estoppel only applies to questions directly put in issue and directly determined in the criminal prosecution." *Id.*

 Upon review of Summers' plea colloquy, this Court determines that Summers is estopped from denying his tax liability. The issue in the criminal pro-

ceeding against Summers, in addition to his plea agreement, is the very issue in question in the case at bar. In fact, the agreement entered into between the United States Attorney and Hugh Summers states, *inter alia,* that:

> Summers acknowledges and agrees that between 1982 and 1990, he received $963,000 in unreported commission income from the activities described in the attached Information, and similar activities. Summers acknowledges that the Internal Revenue Service believes that the total amount of unreported commission income received by Summers from the activities described in the attached Information and similar activities, is $1,192,530.30. Summers agrees to cooperate with the Internal Revenue Service in determining the correct amount of unreported commission income.

*See* Plea Agreement, attached to United States Motion for Summary Judgment at Ex. 2. The issue of whether Summers owed taxes on unreported income is the precise issue of Summers' guilty plea and the identical issue at hand.[7] It is hard to imagine a more direct issue at play between a criminal guilty plea and a civil case. Summers attempts to negate the profound legal significance of his guilty plea by arguing that he had ineffective assistance of counsel in that criminal case. His argument will not prevail here. Since Summers did not raise that argument in the criminal arena, and has failed to utilize any of the statutory and procedural actions available to him to timely or otherwise attack his criminal conviction, he cannot now argue that he does not owe the taxes on income that he pleaded guilty to concealing in the prior proceeding.

---

**7.** The criminal court determined the issue of whether Summers acted to defraud the United States. This is the exact issue before this Court. However, the amount presented by the Service in the criminal plea hearing is different from the amount the United States requests today. Therefore, the United States must submit a clearly supported full and final accounting of Summers' tax liability.

## C. *Summers' Amended Tax Forms and Tax Court Decision*

Beyond the notice of assessments and guilty plea, the United States supplies further evidence to bolster its case against Summers. First, the United States presents amended tax returns filed by Summers under penalty of perjury. *See* Declaration of Charles M. Flesch, at Exhibits D & E. In fact, Summers agreed to file an amended tax form, Federal Form 1040X, as part of his plea agreement with the United States Attorney. These amended tax returns acknowledge that between 1982 and 1990 Summers received $963,000.00 in unreported income. As amended, the tax forms reflect an amount due in the sum of $225,734.00.

Additionally, the United States has presented evidence of Summers' attempt to avoid his tax obligations by filing a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania. The Bankruptcy Court ordered that the income tax liabilities for the years 1985, 1986, 1988, and 1999 were not dischargeable due to Summers' *willful* attempt to evade payment of the tax liabilities. *See In re Summers*, 266 B.R. 292, (Bankr.E.D.Pa.2001) (emphasis added). The Bankruptcy Court held that Summers was estopped from challenging his conclusive admissions made within the criminal case and the corresponding guilty plea. *Id.* Summers is bound by his prior admissions of tax liability.

Because no genuine issue of material fact exists regarding the liability of taxes owed by Summers, the United States is entitled to judgment as a matter of law. Summers' Motion to Dismiss, *i.e.,* Cross Motion for Summary Judgment, is denied as this Court finds that this action is properly before this Court. However, due to

the lack of clarity in the United States' submission for the specific amount that Summers' owes to the United States, this Court has only addressed the issue of liability in today's decision.

## D. *United States' Motion to Dismiss Summers' Counterclaims*

In his counterclaims, Summers requests this Court to find not only that he does not owe the tax liability that he pleaded guilty to, but also that he is entitled to a refund for any money paid during the tax years in question.[8] The Court is not persuaded by the arguments advanced by Summers.

### 1. *Summers' Collection Due Process Claim*

Turning first to Summers' Collection Due Process Claim, it is unclear what specific relief Summers requests of this Court. In his first counterclaim, Summers claims that he received a Notice of Intent to Levy by the Internal Revenue Service on April 15, 2001. Thereafter, Summers requested a Collection Due Process Hearing, pursuant to 26 U.S.C. § 6320 and 26 U.S.C § 6330. It appears that Summers would argue, during this hearing, that he did not receive notice and demand for taxes owed or a Notice of Deficiency, the same arguments that Summers presented to this Court in his motion to dismiss for lack of subject matter jurisdiction. Summers further states that:

> Because the issues involved in the Collection Due Process Hearing request are identical to the issues involved in this cause, if the Court issues a decision in favor of defendant on the subject matter jurisdiction issue in this case, the United States must be bound by that decision in the Collection Due Process hearing.

**8.** Although Summers responded to the United States Complaint with two "cross-claims," the proper designation of such a claim is a counterclaim. The Court will therefore refer to Summers' claims as counterclaims.

Summers Answer at ¶ 55. Although not specifically stated, it appears that Summers is seeking judicial review of the administrative hearing, or lack thereof, before the IRS Appeals Officer. The United States argues that this Court lacks subject matter jurisdiction over such an appeal. This Court agrees with the United States.

The provision governing administrative hearings, 26 U.S.C. § 6330(b), explains that a taxpayer has a right to request an administrative hearing within 30 days of a notice of intent to levy. "However, 26 U.S.C. § 6330(d)(1) provides for review to the Tax Court, unless the Tax Court does not have jurisdiction, in which case the appeal goes to the district court...." *Hart v. IRS*, No. Civ.A.00–4658, 2001 WL 393699, *1 (E.D.Pa. Feb.8, 2001), *aff'd*, 281 F.3d 221 (3d Cir.2002). In *Hart* the Honorable Stewart Dalzell held, and the Third Circuit affirmed, that where the income tax liabilities were at issue, the Tax Court is the court with jurisdiction to hear any appeal, not the district court. Accordingly, because this Court lacks subject matter jurisdiction to hear an appeal of the Collection Due Process determination, the United States' Motion to Dismiss is granted.

### 2. *Summers' Refund Request*

The Court now considers the United States' Motion to Dismiss Summers' second counterclaim. Summers alleges that any payments received by the United States for the tax years under review were obtained by "fraud, deception, coercion and duress." *See* Summers Counterclaim at ¶¶ 57–58. Again, it is unclear the specific relief sought by Summers as he fails to provide the Court with any amount paid or any amount he claims is owed to him. This, however, is of no event because this Court lacks subject matter jurisdiction over this claim as well.

It is axiomatic that a full payment is required before a right to sue the collector for a refund may attach. *Flora v. United States*, 357 U.S. 63, 68, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on reh'g*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). Hence, "a taxpayer must both pay the contested amount and file a claim for refund before suing in district court." *Kane v. United States*, 942 F.Supp. 233, 235 (E.D.Pa.1996), *aff'd*, 118 F.3d 1576 (3d Cir.1997).

Here, it is clear that Summers has not paid the amount of the assessments made against him. Therefore, this court lacks subject matter jurisdiction over Summers' counterclaims seeking a refund and the United States' Motion to Dismiss is granted.