T.C. Memo. 2006-219

UNITED STATES TAX COURT

HUGH D. SUMMERS AND TERESA E. SUMMERS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13874-05L.          Filed October 18, 2006.

Hugh D. Summers and Teresa E. Summers, pro sese.

<u>Kathleen K. Raup</u>, for respondent.

MEMORANDUM OPINION

WELLS, <u>Judge</u>:  The instant matter is before the Court on respondent's and petitioners' motions for summary judgment pursuant to Rule 121.  The issue we must decide is whether respondent's Appeals Office abused its discretion in determining to proceed with the collection of petitioners' 1989 tax

liability.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

At the time of filing the petition, petitioners resided in Paoli, Pennsylania.

### Petitioner Hugh D. Summers's Criminal Case and Amended 1989 Tax Return

During 1992, petitioner Hugh D. Summers (Mr. Summers) pleaded guilty to conspiring to defraud the Internal Revenue Service (IRS) by concealing and diverting income in violation of 18 U.S.C. section 371 (2000).  Mr. Summers acknowledged that he received unreported taxable income of $963,000 between 1982 and 1990.  Mr. Summers was sentenced to 4 years' probation and agreed to file an amended tax return for 1989.  See United States v. Hugh D. Summers, No. 93-CR-35 (E.D. Pa.).

### Petitioners' Previous Tax Court Case

On May 24, 1993, petitioners filed an amended tax return for 1989, reporting an increase in their tax liability in the amount of $69,289.  On November 8, 1993, respondent assessed petitioners the $69,289 shown on petitioners' 1989 amended tax return.

On June 1, 1995, respondent sent petitioners a notice of deficiency regarding negligence penalties for petitioners' 1989 taxable year.  Petitioners timely filed a petition with this

Court challenging the notice of deficiency. On September 26, 1997, pursuant to an agreement between the parties, we entered a decision holding that petitioners were liable for a penalty in the amount of $13,858 pursuant to section 6662(a) for 1989 and that petitioners owed an unpaid prior assessment of $69,289 for 1989. See Summers v. Commissioner, docket No. 17005-95. On November 24, 1997, respondent assessed petitioners the section 6662(a) penalty in the amount of $13,858 for petitioners' 1989 taxable year.

Litigation Involving Petitioners and Commonwealth Land Title Insurance Company

During July 1997, respondent filed a Notice of Federal Tax Lien (NFTL) against petitioners in Berks and Montgomery Counties, Pennsylvania, relating to petitioners' unpaid tax liabilities for 1982 through 1990. Petitioners' surname, however, was misspelled as "Hugh D. & Teresa E. Summer" on the NFTL filed in Montgomery County, Pennsylvania.

On July 31, 1997, Mr. Summers sold two properties to Leemilt's Petroleum, Inc.: (1) 270 W. Greenwich Street, Reading, Berks County, Pennsylvania (the Berks County Property); and (2) Buckert Road and Keim Street, Lower Pottsgrove Township, Montgomery County, Pennsylvania (the Montgomery County Property). Commonwealth Land Title Insurance Company (Commonwealth) insured the title on both properties for the purchaser, Leemilt's Petroleum, Inc., and settlement on both properties was on

July 31, 1997.  At the settlement of the Berks and Montgomery County properties, Commonwealth did not satisfy the tax liens and gave Mr. Summers the proceeds from the sales in the amounts of $107,399.25 and $139,592.47, respectively.  Respondent refused to discharge the tax liens on the Berks and Montgomery County properties following the sale.

On February 10, 1998, respondent received a check in the amount of $107,399.25 from Commonwealth, discharged the tax lien on the Berks County Property, and applied the $107,399.25 to petitioners' 1983, 1984, 1987, and 1990 tax liabilities.[1]

On April 30, 1998, Commonwealth filed a declaratory judgment complaint in the Court of Common Pleas for Montgomery County, Pennsylvania, against respondent and Mr. Summers seeking judgment that respondent's NFTL did not attach to the Berks and Montgomery County properties, formerly owned by Mr. Summers, because petitioners' surname was misspelled.  The case was removed to the U.S. District Court for the Eastern District of Pennsylvania and entitled <u>Commonwealth Land Title Ins. Co. v. United States and Hugh D. Summers</u>, No. 98-CV-2817 (E.D. Pa.).

---

[1]Respondent applied the $107,399.25 as follows:

| Tax year | Amount applied |
| --- | --- |
| 1983 | $33,366.78 |
| 1984 | $19,873.48 |
| 1987 | $31,192.19 |
| 1990 | $22,966.80 |

On November 19, 1999, Commonwealth dismissed with prejudice its claim against respondent and gave respondent a check in the amount of $15,000 to discharge the tax lien on the Montgomery County property. Respondent applied the payment to petitioners' 1985 tax liabilities.

Mr. Summers's Bankruptcy Litigation

On October 9, 1998, Mr. Summers filed a chapter 7 bankruptcy petition in the U. S. Bankruptcy Court for the Eastern District of Pennsylvania (the bankruptcy court), In re Hugh D. Summers, No. 98-33068F. During November 1999, respondent filed a complaint with the bankruptcy court asserting that Mr. Summers's tax liabilities, including those for 1989, and interest thereon were not dischargeable pursuant to 11 U.S.C. section 523(a)(1)(C). Respondent conceded that the penalties and interest on the penalties were dischargeable.

On January 11, 2001, the bankruptcy court held that Mr. Summers's tax liabilities were nondischargeable because he wilfully attempted to evade payment of his taxes. See United States v. Summers, 266 Bankr. 292 (Bankr. E.D. Pa. 2001).

Actions Against Mr. Summers To Reduce Federal Tax Claims To Judgment

On April 3, 2002, respondent filed a complaint against Mr. Summers in the United States District Court for the Eastern District of Pennsylvania (the District Court) seeking to reduce to judgment the tax assessments against Mr. Summers, including

those for 1989.  United States v. Summers, No. 2002-CV-1812 (E.D. Pa.).  During June 2002, Mr. Summers filed an answer and cross-complaint challenging the tax assessments and the amounts of his tax liabilities, including those for 1989.[2]  On August 9, 2002, respondent filed a motion for summary judgment.  During September 2002, Mr. Summers filed a reply to respondent's motion and a motion to dismiss for lack of subject matter jurisdiction.  On October 7, 2002, respondent filed a motion to dismiss Mr. Summers's counterclaims.

On March 27, 2003, the District Court issued a memorandum opinion and entered an order granting respondent's motions for summary judgment and to dismiss Mr. Summers's counterclaims and gave respondent 30 days to present a full and final accounting of Mr. Summers's tax liabilities, including 1989.  See United States v. Summers, 254 F. Supp. 2d 589 (E.D. Pa. 2003).

On April 22, 2003, Mr. Summers filed a memorandum and declaration in response to the District Court's March 27, 2003, order.  On May 30, 2003, Mr. Summers filed a memorandum in response in which he claimed that respondent had received, or should have received, $246,991.72 from Commonwealth and $26,000

---

[2]Mr. Summers's answer and cross-complaint contained, inter alia, several frivolous tax protester type arguments including: He is not a taxpayer within the meaning of the Internal Revenue Code; there is no "1040 tax" listed in the index of the Internal Revenue Code; and that the United States and its agents fraudulently misled him to believe that compliance with the Internal Revenue Code was mandatory.

from petitioners, which was not properly credited to petitioners' account.

On June 24, 2003, respondent filed a declaration asserting that all credits had been properly applied and that petitioners' tax liabilities for 1985, 1986, 1988, and 1989, including accrued interest as of April 27, 2003, amounted to $647,749.86.[3] On December 17, 2003, the District Court entered judgment in favor of respondent and against Mr. Summers, ordering Mr. Summers to pay respondent $647,749.86 for unpaid Federal income taxes for years 1985, 1986, 1988, and 1989 plus interest accruing thereon at the rate provided by section 6621 from April 27, 2003, until paid.

Actions Against Mrs. Summers To Reduce Federal Tax Claims To Judgment

On December 11, 2002, respondent filed a complaint against petitioner Teresa E. Summers (Mrs. Summers) in the U.S. District Court for the Eastern District of Pennsylvania (District Court) seeking to reduce to judgment the income tax assessments made against her for 1985, 1986, 1988, and 1989, United States v. Teresa E. Summers, No. 2002-CV-9008 (E.D. Pa.). On February 10, 2003, Mrs. Summers filed an answer and cross-complaint

---

[3]Respondent's declaration showed Mr. Summers's unpaid tax liabilities and total accrued interest for 1989 to be $95,284.76 and $108,586.31, respectively.

challenging the assessments and tax liabilities, including those for 1989.[4]

On June 6, 2003, respondent filed a motion for summary judgment and to dismiss counterclaims. On July 10, 2003, Mrs. Summers filed a response to respondent's motion in which she asserted that respondent had not properly credited petitioners' account for the payment from Commonwealth.

On September 11, 2003, the District Court granted respondent's motion for summary judgment on the issue of Mrs. Summers's tax liabilities, dismissed Mrs. Summers's counterclaims, and gave respondent 30 days to present a full and final accounting of Mrs. Summers's tax liabilities, including those for 1989. On October 2, 2003, respondent filed a memorandum in response to the District Court's September 10, 2003, order stating Mrs. Summers's tax liabilities for 1985, 1986, 1988, and 1989, including accrued interest as of September 30, 2003, and $13,858 negligence penalty amounted to $749,760.85. On October 31, 2003, Mrs. Summers filed a response, contending

_____

[4]Mrs. Summers's answer and cross-complaint contained, inter alia, several frivolous tax protester type arguments including: She is not a taxpayer within the meaning of the Internal Revenue Code; the income Mr. Summers received and pleaded guilty to tax evasion for was not income within the meaning of the Internal Revenue Code; there is no "1040 tax" listed in the index of the Internal Revenue Code; there is no legislative regulation that requires her to file a tax return for "1040" or "income taxes" and that the United States and its agents fraudulently misled her to believe that compliance with the Internal Revenue Code was mandatory.

that respondent did not properly credit the payments from Commonwealth to her account.

On December 17, 2003, the District Court entered judgment in favor of respondent and against Mrs. Summers, ordering Mrs. Summers to pay $735,902.85 for unpaid Federal income taxes for 1985, 1986, 1988, and 1989, plus interest accruing thereon at the rate provided by section 6621 from September 30, 2003, until paid and a $13,858 negligence penalty assessed on November 24, 1997.

Petitioners' Appeal to the Third Circuit Court of Appeals

Petitioners appealed the respective judgments against them to the United States Court of Appeals for the Third Circuit (Court of Appeals for the Third Circuit). Petitioners' appeals were consolidated at United States v. Teresa E. Summers, No. 04-1375, and United States v. Summers, No. 04-1379. On January 4, 2005, the Third Circuit Court of Appeals affirmed the District Court judgments against petitioners.

Petitioners' Section 6330 Action Relating to Taxable Year 1989

Petitioners failed to pay their income tax liability for 1989. On April 15, 2002, respondent sent petitioners' attorney, who was authorized to receive such notices, a Final Notice of Intent to Levy and Notice of Your Right to a Hearing. On May 10, 2002, petitioners, through their attorney, submitted a Form 12153, Request for a Collection Due Process Hearing. Attached to

the Form 12153 was a 37-page letter consisting of nothing but frivolous tax protester boilerplate.

Because petitioners' cases were still pending in District Court, respondent did not immediately schedule a section 6330 hearing. On March 14, 2005, approximately 2 months after the Third Circuit Court of Appeals affirmed the District Court's judgments in favor of respondent, respondent's Appeals Office sent petitioners a letter advising them that the Appeals Office would schedule an appointment. In a letter dated March 23, 2005, Mr. Summers advised respondent's Appeals Office that his appeal process would not be complete until there was a final determination by the District Court and requested that respondent's Appeals Office hold the matter in abeyance until such a determination had been made.

On April 8, 2005, respondent's Settlement Officer Edith M. Dermody (Ms. Dermody), wrote petitioners and advised them that the arguments raised in their section 6330 hearing request were frivolous, that respondent would not schedule a face-to-face conference if petitioners wished to discuss only frivolous arguments, and that a telephone conference was scheduled for April 28, 2005. On April 21, 2005, Mr. Summers sent Ms. Dermody a letter requesting a copy of their Form 12153,[5] requesting a

---

[5]In his Apr. 21, 2005, letter, Mr. Summers stated that he did not recall making a request for a sec. 6330 hearing and that
(continued...)

face-to-face hearing and acknowledging that alternative collection methods needed to be explored at this meeting, and stating that he was not available for the telephone conference on April 28.

On April 28, 2005, Ms. Dermody sent petitioners a letter to which she attached a copy of the Form 12153, and in which she advised petitioners that if they wanted a face-to-face hearing they must contact her within 15 days and describe the legitimate issues they wished to raise. Ms. Dermody also advised petitioners that they must complete a Form 433-A, Collection Information Statement for Wage Earners and Self Employed Individuals, and return it along with their 2003 and 2004 tax returns by May 13, 2005.

On May 13, 2005, Mr. Summers sent Ms. Dermody a letter in which he raised the following issues: (1) That Ms. Dermody was a settlement officer, not an independent Appeals officer, and that it was improper for her to hold the hearing; (2) that respondent violated the "CDP statutes" by not holding a section 6330 hearing for more than 3 years from the date of the request; and (3) that petitioners did not have any tax liability for 1989 because the IRS improperly credited the payments from Commonwealth, and that,

---

[5](...continued)
his former attorney, Jerry Arthur Jewett, who had since been disbarred, may have made the request without sending petitioners a copy.

even if respondent did not receive the funds from Commonwealth, the 1989 tax liability has been "constructively paid." Mr. Summers further stated that he would not provide the Form 433-A and petitioners' 2003 and 2004 tax returns until the above issues were addressed.

On June 21, 2005, respondent's Appeals Office sent petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 sustaining the proposed levy because petitioners did not provide the Form 433-A, did not provide 2003 and 2004 tax returns, and did not raise legitimate collection alternatives. Petitioners timely petitioned this Court seeking review of respondent's determination to proceed with the collection of petitioners' 1989 tax liabilities. On February 28, 2006, respondent filed a motion for summary judgment, and on March 1, 2006, petitioners filed a motion for summary judgment. Petitioners filed an objection to respondent's motion for summary judgment on April 3, 2006, and respondent filed a response to petitioners' motion for summary judgment on March 24, 2006.

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials and may be granted where there is no genuine issue of material fact and a decision may be

rendered as a matter of law. Rule 121(a) and (b); <u>Fla. Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences are viewed in a light most favorable to the nonmoving party. <u>Craig v. Commissioner</u>, 119 T.C. 252, 260 (2002); <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985); <u>Jacklin v. Commissioner</u>, 79 T.C. 340, 344 (1982). The party opposing summary judgment must set forth specific facts that show that a genuine question of material fact exists and may not rely merely on allegations or denials in the pleadings. <u>Grant Creek Water Works, Ltd. v. Commissioner</u>, 91 T.C. 322, 325 (1988); <u>Casanova Co. v. Commissioner</u>, 87 T.C. 214, 217 (1986).

Section 6330 provides that no levy may be made on any property or right to property of a person unless the Secretary first notifies the person in writing of the right to a hearing before the Appeals Office. The Appeals officer must verify at the hearing that the applicable laws and administrative procedures have been followed. Sec. 6330(c)(1). At the hearing, the person may raise any relevant issues relating to the unpaid tax or the proposed levy, including appropriate spousal defenses, challenges to the appropriateness of collection actions, and collection alternatives. Sec. 6330(c)(2)(A). The person may challenge the existence or amount of the underlying tax, however, only if he or she did not receive any statutory notice of

deficiency for the tax liability or did not otherwise have an opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B).

Where the validity of the underlying tax liability is properly in issue, the Court will review the matter de novo. Where the validity of the underlying tax is not properly in issue, however, the Court will review the Commissioner's administrative determination for abuse of discretion.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  A person may challenge a self-assessed liability reported on his return where he or she has not had the opportunity to dispute the liability.  Montgomery v. Commissioner, 122 T.C. 1, 9 (2004).  An opportunity to dispute such a liability includes a suit by respondent to reduce a tax assessment to judgment.  See MacElvain v. Commissioner, T.C. Memo. 2000-320.

The record in the instant case clearly indicates that petitioners had ample opportunity to dispute the liability reported on their amended tax return for 1989 and the $13,858 section 6662 penalty for that year.  Petitioners litigated the issue of whether respondent failed to apply the payment from Commonwealth to taxable year 1989 in District Court and on appeal to the Third Circuit Court of Appeals.  The Third Circuit Court of Appeals affirmed the District Court's judgments against petitioners reducing the assessments, including the assessment

for 1989, to judgment.  Furthermore, the doctrines of collateral estoppel and res judicata bar petitioners from relitigating this same issue, which was litigated in District Court and the Third Circuit Court of Appeals.  See Commissioner v. Sunnen, 333 U.S. 591 (1948); FMC Corp. and Subs v. Commissioner, T.C. Memo. 2001-298.  Accordingly, we hold that petitioners' underlying tax liability for 1989 is not properly before us.  We therefore review respondent's determination to proceed with the proposed levy for an abuse of discretion.

Petitioners contend that respondent's Appeals officer, abused her discretion by failing to schedule a face-to-face conference with petitioners.  We disagree.  An in person hearing is not automatically guaranteed by section 6330.  Hearings at the appeals level have historically been informal.  Davis v. Commissioner, 115 T.C. 35, 41 (2000).  Hearings may be held in person, but they may also be conducted by telephone or by correspondence.  Katz v. Commissioner, 115 T.C. 329, 337-338 (2000); Dorra v. Commissioner, T.C. Memo. 2004-16.  This Court has held that it is not an abuse of discretion if an Appeals officer determines that a face-to-face hearing would not be productive based on a taxpayer's frivolous or groundless arguments.  Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); Kemper v. Commissioner, T.C. Memo. 2003-195.  We have also held that it is not an abuse of discretion to proceed with collection

where the taxpayer is not in compliance with the tax laws. Collier v. Commissioner, T.C. Memo. 2004-171; Rodriquez v. Commissioner, T.C. Memo. 2003-153.

The record in the instant case demonstrates that a face-to-face conference would not have been productive. On May 10, 2002, petitioners, through their attorney who was authorized to represent them, submitted a request for a section 6330 hearing accompanied by a 37-page letter replete with tax protester boilerplate. On April 28, 2005, Ms. Dermody sent petitioners a letter wherein she provided a copy of their request for a section 6330 hearing and advising petitioners that, if they wanted a face-to-face hearing they must contact her within 15 days and describe the legitimate issues they wished to raise. Ms. Dermody also advised petitioners that they must complete a Form 433-A, and return it along with their 2003 and 2004 tax returns by May 13, 2005.

On May 13, 2005, Mr. Summers sent Ms. Dermody a letter in which he raised the following issues: (1) That Ms. Dermody was a settlement officer, not an independent Appeals officer, and that it was improper for her to hold the hearing; (2) that respondent violated the "CDP statutes" by not holding a section 6330 hearing for more than 3 years from the date of the request; and (3) that petitioners did not have any tax liability for 1989 because the

IRS improperly credited the payments from Commonwealth, and that, even if respondent did not receive the funds from Commonwealth, the 1989 tax liability has been "constructively paid." Mr. Summers further stated that he would not provide Form 433-A and petitioners' 2003 and 2004 tax returns until respondent's Appeals officer dealt with the above issues.

Petitioners' first contention is frivolous. Ms. Dermody was an impartial employee of respondent's Appeals Office and had no prior involvment with petitioners. Petitioners' second contention is equally without merit. Section 6330 does not prescribe a time for scheduling a hearing. Once respondent has referred a case to the Department of Justice for defense or prosecution, only the Attorney General or his delegate has the authority to compromise the case. See sec. 7122(a); United States v. LaSalle Natl. Bank, 437 U.S. 298, 312 (1978). Moreover, Mr. Summers advised respondent that he wished to defer the section 6330 hearing until the judgment of the District Court became final. Accordingly, respondent acted within his discretion by waiting to schedule a section 6330 hearing until after petitioners' appeal to the Third Circuit Court of Appeals was resolved. We have already discussed petitioners' third contention; they are precluded from challenging the issue of the proper crediting of the Commonwealth payments. Finally,

petitioners have a duty to comply with the tax laws and may not withhold the information reasonably requested by respondent or fail to file tax returns.

On the basis of the foregoing, we conclude that it would not have been productive for respondent to schedule a face-to-face hearing.  Accordingly, we hold that it was not an abuse of discretion for respondent to determine to proceed with the proposed levy to collect petitioners' 1989 tax liability, and no genuine issue of material fact exists requiring trial.  We shall therefore grant respondent's motion for summary judgment and deny petitioners' motion for summary judgment.  We have considered all of petitioners' arguments, and, to the extent that we have not addressed them in this opinion, we conclude they are without merit or unnecessary to reach.

Section 6673(a)(1) authorizes the Tax Court to require a taxpayer to pay to the United States a penalty not in excess of $25,000 whenever it appears that proceedings have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceeding is frivolous or groundless.  Although we do not impose a penalty on petitioners in this case, we take this opportunity to admonish petitioners that the Court will consider imposing such a penalty should they

return to the Court in the future in an attempt to delay collection or advance frivolous or groundless arguments.

To reflect the foregoing,

<u>An appropriate order and decision will be entered for respondent</u>.